**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Christopher Michael MURPHY,**
**Appellee.**

Superior Court of Pennsylvania.

Submitted Oct. 30, 2006.
Filed Jan. 11, 2007.

---

**6.** Accordingly, Appellant's *stare decisis* argument is without merit. *See* note 3, *supra.*

Michelle H. Sibert, Asst. Dist. Atty., Carlisle, for Com., appellant.

Susan K. Pickford, Camp Hill, for appellee.

BEFORE: MUSMANNO, GANTMAN and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 The Commonwealth appeals the order by the Court of Common Pleas of Cumberland County granting the motion to suppress filed by Appellee Christopher Michael Murphy.[1] We reverse.

¶ 2 Where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Hamlin*, 503 Pa. 210, 216, 469 A.2d 137, 139 (1983).

¶ 3 Application of this standard in the present case results in a decision contrary to that of the suppression court. Appellee offered no testimony at the suppression hearing and the Commonwealth's uncontradicted testimony at the same hearing was as follows: At 11:18 p.m. on the 20th day of June, 2005, Lisa Aponte phoned the police from her place of employment situated on Harrisburg Pike in Middlesex Township, Cumberland County, concerning Appellee threatening her. Aponte told police that Appellee was driving from New

---

1. It is well-settled that when a motion to suppress is granted, and when the Appellant asserts in good faith that it substantially handicaps or effectively terminates the prosecution for lack of evidence, the Commonwealth has the right to appeal the suppression order. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). In the present case that is precisely what the suppression order accomplished, which entitles the Commonwealth to appeal the suppression court's ruling having asserted in good faith that prosecution of the case is substantially handicapped or terminated with the entry of the order appealed. *See* Appellant's brief, at 1.

York City on Interstate 81 at a high rate of speed, and Appellee wanted Aponte to remain at the job site until he arrived. Middlesex Township police officer Paula Mullen arrived on the scene in advance of Appellee and learned that Appellee phoned Aponte and threatened her for coming between himself and his girlfriend, Jennifer Stoddard.

¶ 4 When Appellee arrived at Aponte's place of employment, the police arrested him for harassment and terroristic threats. Appellee's vehicle was also seized, impounded, and a search thereof produced marijuana. Thereafter, the police searched Appellee's home pursuant to a warrant executed on June 21, 2005, on the strength of Aponte's statements that Appellee was a drug dealer who made two trips a week to New York City to secure drugs. Aponte also informed the police that Appellee admitted he had "runners" all over Cumberland County dispensing drugs, and the proceeds of the drug transactions were "kept [ . . . ] at his house [ . . . ] in Carlisle Borough at 414 N[.] Pitt St[.] with Jennifer Stoddard." *See* Affidavit of Probable Cause attached as Appendix A to Appellant's brief.

¶ 5 The police's search of Appellee's home resulted in charges being lodged against him for possession with intent to deliver a controlled substance (cocaine),[2] possession of drug paraphernalia,[3] and a person not to possess a firearm.[4] Thereafter, Appellee filed a motion to suppress, a hearing was held on February 22, 2006, and Appellee argued that the affidavit of probable cause was "facially invalid" because, *inter alia*, "[t]here [wa]s absolutely no time frame in the four corners of th[e search warrant] to indicate when" the conversation between himself and Aponte took place. N.T. IN RE: OMNIBUS PRETRIAL MOTIONS, 2/22/06, at 43, 45.

¶ 6 The Commonwealth countered that a common sense reading of the four corners of the affidavit (containing Aponte's statement that Appellee traveled to New York City weekly; the police found marijuana in Appellee's vehicle; Appellee's statement during booking but before the search that, "Man, I'm going to jail for life;" Appellee's admission to Aponte that the proceeds from the sale of drugs were kept at his home; Appellee dictating to police who was to receive his cell phone, money, and car; and Appellee's girlfriend confirming his home address to police) presented sufficient probable cause "for the officers to go into [Appellee's] house." N.T. IN RE: OMNIBUS PRETRIAL MOTIONS, 2/22/06, at 48.

■ ¶ 7 The trial court disagreed with the Commonwealth's position and granted Appellee's omnibus pretrial motion to suppress on the basis that, "[i]n the absence of any indication in the probable cause affidavit as to when [Appellee] had possessed currency associated with drug sales at his residence, [ . . . ] the Commonwealth ha[d] not met its burden of proving that the evidence was not obtained in an unconstitutional manner." Trial court opinion, 4/20/06, at 9. A timely notice of appeal followed raising the question:

DID THE SUPPRESSION COURT ERR IN SUPPRESSING EVIDENCE WHERE THE AFFIDAVIT OF PROBABLE CAUSE CONTAINED LANGUAGE INDICATING THAT [APPELLEE'S] CRIMINAL CONDUCT WAS ONGOING?

Appellant's brief, at 4.

■ ¶ 8 In this jurisdiction, in determining whether probable cause for issu-

2. 35 P.S. § 780–113(a)(30).

3. 35 P.S. § 780–113(a)(32).

4. 18 Pa.C.S.A. § 6105.

ance of a warrant is present, the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), was adopted in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). Under such a standard, the task of the issuing authority is to make a practical, common sense assessment whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Commonwealth v. Melilli*, 521 Pa. 405, 419–21, 555 A.2d 1254, 1262 (1989). A search warrant is defective if the issuing authority is not supplied with a time frame within which to ascertain when the affiant obtained the information from the informant and when the informant witnessed the criminal acts detailed in the affidavit of probable cause. *Commonwealth v. Haggerty*, 388 Pa.Super. 67, 564 A.2d 1269, 1271 (1989), *allocatur denied*, 525 Pa. 577, 575 A.2d 109 (1990).

¶ 9 Our Supreme Court, in *Commonwealth v. Baker*, 513 Pa. 23, 518 A.2d 802 (1986), stated:

An issuing authority presented with the sworn testimony of an affiant may, absent obvious chronological inconsistencies, rely that the affiant is speaking of the present or the immediate past. "Staleness" when raised must not be determined by rigorous exactitude, but rather by the experience of reasonable men, cognizant that events in the real world, and more specifically criminal events, have a life of their own, in which hours and days are measured not by clocks and calendars, but rather by who will be watching, and when the coast will be clear.

Many police informants, particularly in drug related offenses, themselves often victims, are hard-pressed to know night from morning, and live a perma-

nent dateless time. In such cases the issuing authority should try as close as possible to establish dates. However, where not possible, magistrates should use the experience of reasonable men under the circumstances to prevent offenders, loaded with poisonous contraband, from walking free because the evidence was "stale." [ ... ] Common sense can determine what is a reasonable age under the circumstances.

*Baker*, at 28, 518 A.2d at 804. As our Supreme Court has noted more recently, "probable cause is a 'practical, nontechnical concept:' it 'is a fluid concept—turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.' " *Commonwealth v. Ruey*, 586 Pa. 230, 253, 892 A.2d 802, 816 (2006) (quoting *Commonwealth v. Glass*, 562 Pa. 187, 754 A.2d 655, 663 (2000)). Indeed, the present case illustrates the very reason the "practical, nontechnical" concept to probable cause was adopted, namely, the need to be mindful of "the notion of probable cause as based on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Gray*, at 483, 503 A.2d at 925 (quoting *Gates*, 462 U.S. at 231, 103 S.Ct. 2317).

¶ 10 Herein, the affidavit of probable cause for the search warrant reads as follows:

Your Affiant is Detective Jeffrey D[.] Kurtz, a sworn police officer with the Carlisle Police Department. Your Affiant has been a sworn police officer in Pennsylvania for over twelve (12) years and has been assigned as a detective in drug investigations for over two (2) years. Your Affiant has received training from the United State [*sic*] Department of Justice—Drug Enforcement Agency (DEA), Pennsylvania State Po-

lice (PSP), Pennsylvania Office of the Attorney General (PA OAG), Harrisburg Area Community College (HACC) for both Municipal Police Academy and other follow-up training, and training held for Federal, State and Municipal law enforcement officers. Your Affiant is empowered to apply for and execute search warrants for violations of the Pennsylvania Crimes Code (Title 18). Your Affiant has participated in over three hundred (300) drug investigations. Your Affiant was made aware of the following investigation that occurred in the late night hours of Monday 20 June, 2005 into Tuesday 21 June, 2005.

Officer Paula Mullen, Middlesex Twp[.] Police Department, responded to the Arby's Restaurant on the Harrisburg Pike for a report of threats being made to an employee there. Officer Mullen learned from Lisa Aponte that [Appellee] had called her and made threats to her welfare and safety over a domestic issue [Appellee] was having with his girlfriend, Jennifer Stoddard.

Aponte also told Officer Mullen that she had though [*sic*] about purchasing crack-cocaine from [Appellee], she had a past addiction to crack-cocaine and talked to him [Appellee] about getting crack-cocaine from him and he had confided in her the following information; that he [Appellee] made frequent trips to New York City (N.Y.C) to pick up crack-cocaine and marihuana and that he [Appellee] made these trips at least two (2) times a week, that he [Appellee] was a distributor of crack-cocaine and marihuana and that he [Appellee] had runners all over Cumberland County, that he [Appellee] kept a large sum of U.S. Currency, the proceeds from illegal drug transactions, at his house and the [*sic*] he [Appellee] resided in Carlisle Borough at 414 N[.] Pitt St[.] with Jennifer Stoddard.

Aponte additionally told Officer Mullen that during a call with [Appellee], prior to Aponte calling for police assistance, [Appellee] told her (Aponte) that he was coming back from New York, was on I 81 doing 110 mph and that she was not to leave Arby's until he [Appellee] got there and talked to her. [Appellee] called back and told her not to leave that one of his boys would be there in fifteen (15) minutes and in about that amount of time Michael Dwyer arrived. Dwyer told Officer Mullen that he was a friend of [Appellee].

While taking the report from Aponte, [Appellee] arrived at Arby's and began banging on the doors. Officer Muller subsequently took [Appellee] into custody.

[Appellee] was driving a Ford Probe, which had in plain view a large duffel style carrying bag and a sum of U.S. Currency in the center console with the outer bill appearing to be a $50. [Appellee] gave pre and post Miranda statements about possessing a small amount of marihuana inside the Probe and agreed to give consent for the recovery of the small amount of marihuana but began to dictate to Officer Mullen who would get his phone, money and the car. Officer Mullen subsequently had the Probe impounded for a search warrant in Middlesex Twp.

[Appellee] was transported to the Carlisle Central Processing at the Courthouse by Officer Fiber, North Middlesex Twp[.] Police Department. [Appellee] was overheard making the statement[,] "Man, I'm going to jail for life" once inside the booking center.

Officer Mullen subsequently contacted the Carlisle Police Department, which contacted Your Affiant to assume the investigation in regards to the residence

at 414 N[.] Pitt St[.], Carlisle Borough, Cumberland County.

Your Affiant charged [Appellee] (B/M DOB 07–19–1974) with three (3) counts of unlawful delivery of the a [sic] controlled substance (crack-cocaine) from drug investigations which happened in the spring of 2004 in Carlisle Borough. [Appellee] was living with Jennifer Stoddard (W/F [DOB] 01–25–1984) in the Carlisle and Enol[a] area of Cumberland County during and after the investigations last year.

Your Affiant is aware that [Appellee] made frequent trips to NYC, a known source city for illegal drugs, during the time he was living in Carlisle Borough.

Your Affiant is aware that [Appellee] was residing at 414 N[.] Pitt St[.], Carlisle Borough with Stoddard prior to this incident.

Your Affiant met with Stoddard this date after being called to work. Stoddard said that she had moved out of the residence yesterday (Monday 21 June 2005) but that [Appellee] still had his belongings there. Currently there is an officer stationed at the residence to ensure that no one enters the residence until this search warrant is executed there.

Your Affiant is requesting the search warrant for the residence to search for and recover any illegal controlled substances that might be present, recover the proceeds from drug transactions to include but not limited to U.S. Currency, to recover drug paraphernalia to include but not limited to scales, cutting agents and packaging materials, records of drug transactions, communication devices to include but not limited to cellular phones.

Your Affiant is aware that persons engaged in the illegal dealings of controlled substances will often kept [sic]

those items and the proceeds from those items hidden in their places of residence and in storage units or areas located on the premises but not directly connected to the dwelling. If any such outside storage units or sheds are present, Your Affiant asks that they be included in the search warrant.

The search warrant was executed on June 21, 2005, and the execution produced quantities of cocaine, drug paraphernalia, and a firearm, which Appellee was charged with possessing in violation of the Controlled Substance, Drug, Device and Cosmetic Act, and the Crimes Code.

¶ 11 Appellee argued before the suppression court that the warrant lacked probable cause with the failure of the affidavit to set forth a time frame for the conversation between himself and Aponte, which void rendered the information "not fresh" and violative of the Pennsylvania Constitution. *See* N.T. IN RE: OMNIBUS PRETRIAL MOTIONS, 2/22/06, at 45. Appellee's query below was one of whether there was reason to believe that criminal activity was on-going at the time application for the warrant was made. Absent this time element, Appellee argued that the evidence seized by police should be suppressed. The suppression court agreed and granted Appellee's motion.

¶ 12 While we agree with Appellee's statement of the law in that the warrant must set forth the time frame within which the magistrate can ascertain whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place," *Melilli*, 555 A.2d at 1261, we find the freshness of the information concerning Appellee's drug-related activities was present for the magistrate to issue the warrant. The fact that the informant was named added additional reliability to the information given to the issuing authority. *See Commonwealth v. Barba*,

314 Pa.Super. 210, 460 A.2d 1103, 1106 (1983) (citations omitted).

¶ 13 A fair reading of the affidavit leads to the conclusion that the informant reported what she had been told in the "immediate past." Any other interpretation would require that we ignore the common sense approach adopted in *Gray, supra,* and revert to the hypertechnical standard required under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Our decision is supported by *Commonwealth v. Murphy,* 427 Pa.Super. 578, 629 A.2d 1020 (1993), and *Haggerty, supra.*

¶ 14 In *Haggerty,* the defendant asserted that the affidavit did not set forth with specificity a time frame within which to ascertain when the informant obtained knowledge of his alleged drug-related activities. The defendant also argued that the warrant lacked probable cause to supply the magistrate with information indicating that evidence of criminal activity would be found at the residence. *Haggerty,* 564 A.2d at 1269. Despite the lack of information concerning when the informant witnessed the defendant's possession of a large quantity of cocaine, the affiant's use of the present tense in the affidavit led the trial court and this Court to conclude that the defendant's drug activity was currently in progress. *Haggerty,* 564 A.2d at 1269.

¶ 15 This Court in *Murphy, supra,* was confronted with affidavits of probable cause that listed the date the informant provided police the locations where Appellant stored drugs and money from the sales of same—one address was used for storage and the other site for sales. The fact that the informant did not provide the dates upon which he observed the drugs and money possessed by the defendant was of no moment. On the strength of *Haggerty, supra,* we ruled that the affidavits of probable cause presented sufficient

information from which to infer that the defendant's drug activity was in progress at the time the Commonwealth applied for the warrants. *Murphy,* 629 A.2d at 1023.

¶ 16 Herein, there is no date mentioned by the informant of when her conversation with Appellee took place. Nonetheless, consistent with the rationale espoused in *Murphy* and *Haggerty,* we find the presence of facts from which the issuing authority could infer Appellee's residence housed the illegal drugs and/or the proceeds justifying the issuance of a search warrant. Such facts consist of Aponte being told by Appellee that he was a drug dealer, he made weekly trips to New York City to pick up drugs, he had personnel in Cumberland County to distribute the product, and he "kept" a large sum of money from the sale of drugs at his Cumberland County address, which was still his home as of June 21, 2005. Add to this portrait of Appellee the fact that marijuana was found in his vehicle on June 20, 2005, he had been charged in 2004 with three counts of unlawful delivery of a controlled substance (crack-cocaine) in the Carlisle and Enola areas in Cumberland County, and he stated during the booking process for his arrest for harassment and terroristic threats on June 20, 2005, that, "Man, I'm going to jail for life."

¶ 17 Giving a common sense reading to the affidavit of probable cause, and rejecting a hypertechnical interpretation of the facts recited by the informant as to time frame, we believe it reasonable to infer that Appellee's drug activity was in progress (and the United States currency generated was stored at his Carlisle Borough address) at the time the police applied for a warrant to search Appellee's residence. *See Commonwealth v. Gannon,* 308 Pa.Super. 330, 454 A.2d 561, 565 (1982) ("The critical element in a reasonable search is not that the [possessor] of the property is

suspected of crime but that the specific things to be searched for and seized are located on the property to which entry is sought.") (*quoting Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)). From the totality of the circumstances, we find it reasonable for the issuing authority to infer that there was a "fair probability" that Appellee's residence contained illegal drugs and the proceeds therefrom to justify the issuance of a search warrant. *See Melilli, supra.*

¶ 18 Accordingly, finding that the search warrant did possess the requisite probable cause to validate the evidence seized, we reverse the order of the trial court.

¶ 19 Order reversed. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.