**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Thomas Lee HUNTINGTON, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 13, 2007.

Filed May 16, 2007.

---

Alisa R. Hobart, Assistant District Attorney, Reading, for Commonwealth, appellant.

John T. Adams, Reading, for appellee.

BEFORE: HUDOCK, TODD and McCAFFERY, JJ.

OPINION BY HUDOCK, J.:

■ ¶ 1 This is an appeal by the Commonwealth from an order that granted suppression of evidence and dismissed a criminal complaint pursuant to a petition for writ of *habeas corpus* before the Commonwealth could file an interlocutory appeal as of right from the suppression ruling.[1] We reverse and remand.

---

1. The Commonwealth may take an appeal as of right from an order that does not end the entire case if the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution. Pa.R.A.P. 311(d); *Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532, 536, n. 2 (2001). In an abundance of caution, the Commonwealth has filed such a certification

¶ 2 On December 19, 2005, a criminal complaint was filed charging Thomas Lee Huntington (Appellee) with one count of sexual abuse of children (possession of child pornography).[2] The charge was based on evidence obtained pursuant to a search warrant. Appellee filed an omnibus pre-trial motion seeking suppression. The trial court did not conduct a full hearing on the suppression motion, but rather accepted a copy of the search warrant and affidavit of probable cause into evidence at a stipulated hearing and later received briefs from the parties.

¶ 3 The trial court concluded that the affidavit of probable cause was inadequate because it does not, within its four corners, provide definitions for certain relevant computer-related terms with which the trial court was unfamiliar, *i.e.*, "e-mail addresses, screen names, IP addresses, Yahoo groups, cybertip, and IP tracker logs." Trial Court Opinion, 8/16/06, at 2. The trial court also found that the affidavit relied on hearsay information. On June 20, 2006, the trial court granted suppression and simultaneously dismissed the criminal complaint on the grounds that the Commonwealth didn't claim to have any additional evidence against Appellee beyond the evidence that was suppressed.

¶ 4 The Commonwealth filed a timely notice of appeal on July 13, 2006. The trial court ordered the Commonwealth to file a Rule 1925(b) statement, and the Commonwealth timely complied. This appeal presents two issues:

in this case. Thus, even if the trial court had not dismissed the criminal complaint underlying this appeal, the Commonwealth would have been entitled to pursue an appeal from the trial court's decision "under the circumstances permitted by law." Pa. R.A.P. 311(d).

2. 18 Pa.C.S.A. § 6312(d).

A. DID THE TRIAL COURT ERR IN SUPPRESSING EVIDENCE DISCOVERED AS A RESULT OF A VALID SEARCH WARRANT SUPPORTED BY ADEQUATE PROBABLE CAUSE?

B. DID THE TRIAL COURT ERR IN DISMISSING THE CASE WITHOUT PERMITTING THE COMMONWEALTH TO EXERCISE ITS ABSOLUTE RIGHT TO APPEAL FROM THE ADVERSE SUPPRESSION RULING?

Commonwealth's Brief at 4.

¶ 5 When the Commonwealth appeals from an adverse suppression ruling, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as, read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137, 139 (1983); *Commonwealth v. Murphy*, 916 A.2d 679, 680 (Pa.Super.2007). Instantly, no evidence was presented to the trial court other than a copy of the application for the search warrant. In reviewing a suppression ruling, we must ascertain whether the record supports the suppression court's factual findings and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Ryerson*, ·817 A.2d 510 (Pa.Super.2003).

¶ 6 In this jurisdiction, the question of whether probable cause exists for the issuance of a search warrant must be answered according to the "totality of the circumstances" test articulated in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See Murphy*, 916 A.2d at 681–682 (discussing the Pennsylvania standard for issuing a search warrant).

The task of the magistrate acting as the issuing authority is to make a "practical, common sense assessment" of whether, "given all the circumstances set forth in the affidavit," a "fair probability" exists that contraband or evidence of a crime will be found "in a particular place." *Id.* at 682. A search warrant is defective if the issuing authority has not been supplied with the necessary information. *Id.* The chronology established by the affidavit of probable cause must be evaluated according to a "common sense" determination. *Id.*

¶ 7 Hearsay information is sufficient to form the basis of a search warrant as long as the issuing authority has been provided with sufficient information to make a "neutral" and "detached" decision about whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Commonwealth v. Woosnam*, 819 A.2d 1198, 1208 (Pa.Super.2003) (quoting *Commonwealth v. Baker*, 532 Pa. 121, 615 A.2d 23, 25 (1992)). The duty of the reviewing court is simply to verify that the issuing magistrate had a "substantial basis for concluding that probable cause existed." *Id.* The uncorroborated hearsay of an unidentified informant may be accepted as a credible basis for issuing a search warrant if the affidavit of probable cause avers circumstances that support the conclusion that the informant was credible. *Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532, 537–538 (2001). In assessing an informant's reliability, a presumption exists that the information is trustworthy when it has been provided by an identified witness. *Commonwealth v. Waltson*, 703 A.2d 518, 522 (Pa.Super.1997). As set forth in the affidavit of probable cause, the original source of the information that led to the filing of the application for the search warrant was not anonymous. The information

was provided by Yahoo, Inc., and was verified and corroborated to the extent possible by the corporation's legal department and by additional police investigation conducted in part pursuant to a court order. *See infra* at 6–8 (reiterating the content of the affidavit of probable cause).

¶ 8 Under our law, the focus is on the information provided to the *issuing authority* and its response to that information. *Murphy*, 916 A.2d at 682. Probable cause is a practical and fluid concept that turns on the assessment of probabilities in particular factual contexts, which cannot readily be reduced to a neat set of legal rules. *Id.* The role of the magistrate, as the issuing authority, is to make a "practical, common sense decision" of whether, "given all the circumstances set forth in the affidavit," including the veracity and basis of knowledge of any persons supplying hearsay information, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Ryerson*, 817 A.2d at 514. The role of the reviewing court and the appellate court is to ascertain whether the issuing magistrate appropriately determined that probable cause existed for the issuance of the warrant. *Id.* Probable cause is based on a finding of probability and does not require a *prima facie* showing of criminal activity. *Id.* Both the reviewing court and this Court must accord deference to a magistrate's finding of probable cause. *Id.*

¶ 9 The affidavit of probable cause in the search warrant presented to the issuing magistrate in this case contained the following information:

1. Your Affiant, Detective W. Douglas Weaver, Badge Number [omitted], is an employee of the Berks County District Attorney's Office, 633 Court Street, Reading, PA 19601. I have been duly sworn as a Berks County Detective. I am currently assigned to the Major Crime Unit. One of my duties involves the investigation of child pornography. I have been a law enforcement officer for thirty-one years. During my tenure, I have conducted in excess of 1000 criminal investigations that included, but were not limited to criminal arrests and the execution of search warrants.

2. On 05–16–05, I was assigned to investigate an incident that was referred to our Agency by Detective Lieutenant David C. Peifer of the Delaware County District Attorney's Office. He is assigned to Delaware County Internet Crimes Against Children Task Force. The referral involved a subject utilizing an e-mail address to upload images of children, who appeared to be under the age of eighteen, and were exposing their genitals while in sexually explicit poses. This violation occurred via Yahoo on 11–30–04 at 1154 hours., [sic] and was reported by Yahoo, Inc. as cybertip number 288696.

3. On 05–17–05, I thoroughly reviewed Peifer's report, numbered 20041216M7584(01), which comprehensively documented several facts and circumstances. I learned that Yahoo Legal Department said the person utilizing the e-mail address "thom682000@yahoo", and Yahoo screen name "thom68200" [sic] with a registration IP address 63.214.197.252 uploaded to a Yahoo group titled "the_future_shines_bright."

4. On 12–17–04, Peifer obtained a court order that directed Yahoo to supply subscriber information, Internet connection access logs and group management logs for the account associated with the screen name "thom682000."

5. On 12–23–04, Peifer received the Yahoo response which averred that the subscriber information indicated the account was in the name Mr. t.h. of Bridgeville, DE, 19933. The Yahoo doc-

ument further stated that this information is supplied by the subscriber and is not verified by Yahoo, Inc. The subscriber listed a birth date of 12–04–68. Additionally, it was reported that the account was created on 01–17–01 at 1254 hours from IP address 63.214.197.252.

6. Yahoo also supplied the IP tracker logs for "thom68200." [sic] The said logs indicate a successful log on by "thom682000" from IP address 68.82.123.219 on 12–20–04 at 1613 hours (GMT–0500) [sic].

7. On 12–23–04, Peifer checked www. checkdomain.com and found the IP address was owned and maintained by Comcast Cable Communications.

8. On 01–06–05, Peifer requested and received a court order directing Comcast Cable Communications to supply subscriber information on the person assigned and using IP address 68.82.123.219 on 12–20–04 at 1613 hours.

9. On 04–18–05[,] Peifer received a response from Comcast Cable Communications who advised the account was in use by an account in the name of Sheila Huntington of 101 Hickory Drive, Bethel, PA 19507, with a telephone number of [omitted]. The report indicated that the account status was active.

10. On 05–16–05, I checked Penndot [sic] drivers' records and found the name of Sheila R. Huntington, with a birth date of [omitted], and an operator's license number of [omitted]. The address given was Box 133, Route 183, Strausstown, PA 19559.

11. On 05–17–05, I drove to the home situated at 101 Hickory Drive in Bethel Township, Berks County, Pennsylvania. I went to the front door and knocked. I was greeted by a white female that I recognized as that person depicted in my earlier Penndot [sic] inquiry, and known as Sheila R. Huntington. Before I departed, she said that her residence was 101 Hickory Drive, and she had lived there for two years. I recorded a description of the home and the two outbuildings within the curtilage.

12. Your Affiant is a graduate of the 162nd class of the FBI National Academy, Quantico, Virginia. During the eleven weeks of training that were accredited by the University of Virginia's graduate degree program, I received instruction in various sex crime investigations, including, but not limited to child pornography. One of the senior instructor's [sic], FBI Special Agent Kenneth V. Lanning, served thirty years with the FBI's Behavioral Science Unit. In 1997, he received the FBI's Director's Award for Special Achievement for his career accomplishments in connection with missing and exploited children. Lanning's experience, training and research revealed that regardless of how much child pornography the collector possesses, often he/she "never has enough" and "rarely throws anything away." According to Lanning, another typical feature of a child pornography collection is consistency. Even if evidence of the existence of a child pornography collection is several years old, "chances are he/she still has the collection, now, only it's larger." K. Lanning, "Child Molestors [sic]: A Behavioral Analysis 69" (National Center for Missing and Exploited Children, 4th ed., 2001).

13. Based on the facts, circumstances and opinions aforementioned, your Affiant respectfully submits that there is probable cause to believe that the files and documents identified and related documents pertaining to the procurement, attempted procurement, or possession/ distribution of computer images depicting the sexual conduct of children under the age of eighteen, in violation of PA Crimes Code Title 18, Section 6312(d) are located on the premises of

101 Hickory Drive, Bethel Township, Berks County, PA.

Application for Search Warrant, 5/27/05, at 3–4.

■ ¶ 10 We agree with the trial court that a magistrate may not consider "any evidence" outside the four corners of the affidavit of probable cause when deciding whether to issue a search warrant. *Ryerson*, 817 A.2d at 513. However, we cannot agree that the vocabulary employed in the affidavit of probable cause comprises such obscure technological jargon that it would be impossible to decipher it in the absence of information not provided within the four corners of the affidavit itself. The application for the search warrant must be evaluated from the perspective of the issuing magistrate and whether it provides sufficient information, within the four corners of the affidavit, to support the conclusion that probable cause exists to believe that contraband or evidence of a crime will be found in a particular place. *Ryerson*, 817 A.2d at 514. In this case, the issuing magistrate appears to have been sufficiently familiar with this terminology to understand it and to conclude from the factual assertions in the affidavit that probable cause existed for the issuance of the warrant.

¶ 11 If the issuing magistrate had not understood the definitions of the words employed in the affidavit of probable cause, undoubtedly she would have stated this and denied the application for a search warrant. The affiant then would have been placed on notice at the appropriate time when the matter could be corrected that the terminology needed to be clarified. However, the magistrate did not indicate that she failed to understand the words in the affidavit of probable cause. When confronted with Appellee's motion to suppress, the trial court was entitled to take judicial notice of the dictionary definitions of any terms with which it was unfamiliar for the purpose of ascertaining whether the *factual averments* in the affidavit of probable cause were sufficient to sustain the issuance of the warrant. *See* Pa.R.Evid. 201(c) and (f) (providing that a court may take judicial notice whether requested to do so or not, and permitting a court to take judicial notice at any stage of the proceedings). A court may inform itself as to the meaning of a word or an abbreviation by consulting books of authority, including encyclopedias and dictionaries, even when they have not been introduced into evidence. *Riccio v. American Republic Insurance Co.*, 453 Pa.Super. 364, 683 A.2d 1226, 1232, n. 2 (1996), *aff'd*, 550 Pa. 254, 705 A.2d 422 (1997). Courts also may admit such works to aid in the exercise of the judicial function. *Id.* It is not incumbent upon the trial court or upon this Court to second-guess the breadth and depth of the issuing magistrate's vocabulary.[3] Rather, a reviewing trial court or an appellate court must defer to a magistrate's finding of probable cause if the factual information

---

3. In *Commonwealth v. Serge*, 586 Pa. 671, 896 A.2d 1170, 1178 (2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 275, 166 L.Ed.2d 211 (2006), our Supreme Court held that "the law has been flexible enough to accommodate scientific progress and technological advances in all fields, and should continue to do so[.]" The computer-related terminology employed by the affiant is sufficiently well-established at this point that we cannot agree that it constitutes incomprehensible "technical jargon." *See, e.g., Commonwealth v. Robertson–Dewar,*

829 A.2d 1207, 1209 (Pa.Super.2003), *appeal denied*, 576 Pa. 712, 839 A.2d 352 (2003) (using without definition the terms "IRC channel," "Internet Protocol (IP) address," "local host name," "Internet Service Provider," "Domain Name Service (DNS) command," "domain names," and "IP addresses"). We note that Yahoo, Inc., and Comcast, Inc., are the names of corporations and, thus, are not amenable to "definition" nor could they be deemed to be "technical terms."

contained in the affidavit actually suffices to establish probable cause. *Ryerson,* 817 A.2d at 514.

¶ 12 A reviewing court may not conduct a *de novo* review of the issuing authority's probable cause determination. *Torres,* 764 A.2d at 540. The role of both the reviewing court and the appellate court is confined to determining whether there is substantial evidence in the record supporting the decision to issue the warrant. *Id.* In this case, we agree with the Commonwealth that the factual averments set forth in the affidavit of probable cause clearly provide a sufficient basis for issuing the search warrant. The affidavit explains how the matter was called to the attention of the investigating authorities, the steps taken to verify the tip, the timing of the investigation and why the information should not be deemed to be "stale." The suppression or exclusion of evidence is a "most extreme remedy" that can be justified only when it is necessary to vindicate fundamental rights or to correct or deter police abuse. *Commonwealth v. Dennis,* 421 Pa.Super. 600, 618 A.2d 972, 981 (1992). We conclude that there is no justification for granting suppression in this case. We therefore reverse the trial court's suppression ruling.

¶ 13 The trial court also granted *habeas corpus* relief premised on its conclusion that the Commonwealth had no evidence against Appellee other than the evidence that was suppressed. Because we have reversed the trial court's suppression ruling, the grounds for its grant of *habeas corpus* relief no longer exist. We therefore reinstate the criminal complaint and remand for trial.

¶ 14 Reversed and remanded for trial; Superior Court jurisdiction relinquished.