J-S67039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
   :          PENNSYLVANIA
   :
       v.    :
   :
   :
   :
LEE ANTHONY TORRES    :
   :
         Appellant    :    No. 728 MDA 2019

Appeal from the Judgment of Sentence Entered April 9, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003002-2017

BEFORE:    OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED JANUARY 27, 2020**

Appellant, Lee Anthony Torres, appeals from the judgment of sentence entered in the Court of Common Pleas of Berks County following his conviction by a jury on two counts of possession of a firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1). After a careful review, we affirm.

The relevant facts and procedural history have been set forth by the trial court, in part, as follows:

> On April 26, 2017, Criminal Investigator [Matthew] Niebel ("C.I. Niebel") of the Reading Police Department applied for a search warrant and received authorization to search the residence located at 1140 Green Street, Reading, Berks County, Pennsylvania ("Residence"). On May 2, 2017, C.I. Niebel obtained a second search warrant for the Residence.
>
> As part of his investigation into the Residence, C.I. Niebel interacted with a confidential source ("C.S.") who was familiar

_____

[*] Former Justice specially assigned to the Superior Court.

with the Residence. C.I. Niebel testified that he had known C.S. since October of 2016. C.S. had been used by the Reading Police Department for four years as of the search warrant application date. C.S. had provided information to law enforcement that had led to an arrest, conviction and incarceration of an individual for possession with intent to deliver a controlled substance.

C.S. began providing C.I. Niebel with information about the Residence in March of 2017. C.S. was able to identify [Appellant] through a JNET photograph printed out by C.I. Niebel. C.S. provided C.I. Niebel with the Residence's address and knew [Appellant] was on state parole. C.I. Niebel independently verified [Appellant's] address. C.I. Niebel learned through JNET that the Residence's address was on [Appellant's] Pennsylvania driver's license. He also discovered that the Residence's address was listed as [Appellant's] address with state parole and there was an active warrant for a parole violation at that address. The Reading Police Department record system had contact with [Appellant] in July of 2016 where [Appellant] provided law enforcement with the Residence's address as his address.

In March of 2017, C.S. made a controlled purchase of heroin from the Residence. A second controlled purchase of heroin was made from the Residence between April 26, 2017, and April 28, 2017. C.S. provided information to C.I. Niebel that [Appellant] was in possession of at least one firearm, but this was not included in the affidavit of probable cause.

The first search warrant was executed on April 28, 2017. Upon entry, police officers encountered [Appellant's] girlfriend, Mayra Torres ("Ms. Torres"). Ms. Torres was detained, and the officers searched the Residence. In the dining room, officers located a table containing multiple items of mail addressed to [Appellant] and male clothing. A loaded Smith & Wesson .44 Magnum revolver and .44 Magnum ammunition were located inside of a second-floor bedroom. The ammunition was found inside of a nightstand along with [Appellant's] social security card and his parole paperwork. The Smith & Wesson revolver was located inside of a blue plastic tub near the nightstand and contained men's clothing. Ms. Torres stated that the firearm belonged to [Appellant]. Ms. Torres had previously seen the Smith & Wesson during a time when [Appellant] had friends over to the Residence. Ms. Torres contacted [Appellant] and informed him that the police officers located the Smith & Wesson revolver. Nothing was located in the Residence related to the selling or

distribution of narcotics. The Smith & Wesson revolver was previously reported as stolen.

[Appellant] was not present at the Residence when the search warrant was executed but [he] was located at 845 Weiser Street. [Appellant] was taken into custody and was in possession of a black smartphone….C.I. Niebel looked at [Appellant's] smartphone. C.I. Niebel discovered the following text conversation took place on [Appellant's] smartphone:

3/27/17: [Appellant] had a text conversation with an individual identified as "Stink" regarding the acquisition of a .22 caliber firearm and ammunition. [Appellant] arranged for the .22 caliber firearm to be dropped off at the Residence with Ms. Torres. "Stink" sent a text message at the end of the conversation stating that [Ms. Torres] received the .22 caliber firearm.

4/15/17: [Appellant] sent a text message to Ms. Torres stating "There's another bigger gun under the cushions."

4/28/17: [Appellant] received a text message from 484-721-**** stating "Mayra said they only got the big gun where is the 22." [Appellant] responded with "don't worry about the fu**ing gun."

5/1/17: [Ms. Torres] received a Facebook message from "Bussa Buss Down" asking "so what is he booked 4." [Ms. Torres] responded with "I guess the drug sale." [Appellant] then sent a message to "Bussa Buss Down" stating "they found a gun in my crib." "Bussa Buss Down" responded with "Damn. Black oR [sic] Silver gun?" A response was sent stating "Silver old one."

The messages in [Appellant's] smartphone indicated that there was a second firearm present at the Residence. However, [Appellant's] smartphone was remotely locked from an outside location before any evidence was able to be extracted. On May 2, 2017, C.I. Niebel obtained a second search warrant for the Residence and located ammunition for a .22 caliber firearm in the same nightstand as the .44 caliber ammunition. A partially loaded .22 caliber semiautomatic handgun was located in a box in the rear yard. Ms. Torres stated that the firearm belonged to [Appellant].

Trial Court Opinion, filed 6/26/19, at 3-6 (footnotes and citations to record omitted).

Appellant was charged with various offenses, and the trial court appointed counsel to represent Appellant. Appellant filed numerous *pro se* motions, including a motion to suppress the evidence seized by the police from the Residence.[1]  Further, on November 15, 2018, Appellant filed a motion to proceed *pro* se, and following a colloquy, the trial court granted Appellant's request.  However, the trial court appointed John A. Fielding, III, as standby counsel.

Following a hearing, by order and opinion entered on January 9, 2019, the trial court denied Appellant's suppression motion.[2]  Thereafter, Appellant proceeded to a jury trial with standby counsel.  At trial, the Commonwealth offered the testimony of C.I. Niebel and Ms. Torres.  Specifically, C.I. Niebel

---

[1] In his motion to suppress, Appellant presented the following claims:  (1) the police searched the Residence without a valid search warrant, probable cause, or voluntary consent; and (2) the police violated the "knock and announce rule" when they entered the premises. **See** Motion to Suppress, filed 8/21/17. In his supplemental motion to suppress, Appellant presented three claims: (1) the search warrants for the Residence were overly broad in that they merely listed general items to be seized; (2) the first search warrant was not supported by probable cause; and (3) the affiant made deliberate misrepresentations in the affidavit of probable cause with regard to alleged drug activities/investigations occurring at the Residence.  **See** Supplemental Motion to Suppress, filed 6/28/18.

[2] In the January 9, 2019, order, the trial court disposed of twenty-four *pro se* motions/requests, which had been filed by Appellant.

testified that, when he and his fellow officers executed the first search warrant on April 28, 2017, Ms. Torres was the only person inside of the Residence. N.T., 3/18/19, at 44. C.I. Niebel testified the police discovered multiple pieces of mail addressed to Appellant, as well as men's clothing, on the dining room table. *Id.* at 46. One of the pieces of mail was from the state parole office. *Id.* at 47.

C.I. Niebel further testified the police found in the bedroom a .44 Magnum revolver and ammunition for the revolver, as well as Appellant's social security card and parole paperwork. *Id.* at 48. Specifically, the ammunition, card, and paperwork were found in a nightstand drawer while the revolver was found in a blue plastic tub that was on the ground near the nightstand. *Id.* at 48-49. The blue plastic tub also contained men's clothing. *Id.* at 49.

C.I. Niebel testified the initial search warrant included the search of Appellant's person, and when Appellant was arrested on Weiser Street after the initial search warrant had been executed at the Residence, the police searched him. *Id.* at 52. This search of Appellant's person revealed a black smartphone. *Id.* at 53. C.I. Niebel confirmed that, after reviewing the smartphone's text messages, which indicated a second firearm was in the Residence, the police secured a second search warrant, which they executed at the Residence on May 2, 2017. *Id.* The police discovered ammunition for a .22 caliber handgun in the bedroom's nightstand, as well as a partially

loaded .22 caliber handgun in a box of Christmas lights, which was sitting on top of a trashcan in the rear yard. *Id.* at 57-59. Ms. Torres stated that the gun belonged to Appellant. *Id.*

Ms. Torres testified she lived at the Residence for approximately four years with Appellant, who was her paramour. *Id.* at 136-38. During the month of April 2017, Appellant was staying at the Residence mostly on weekends because he was in a halfway house. *Id.* at 139.

Ms. Torres testified she and Appellant shared a bedroom; however, Appellant slept on the side of the bed by the nightstand from which the police seized the .44 Magnum revolver and ammunition for the revolver, as well as Appellant's social security card, Appellant's parole paperwork, and ammunition for the .22 caliber handgun. *Id.* at 140-41. She also testified Appellant used the nightstand. *Id.* Ms. Torres indicated some of the clothes in the blue bin belonged to her while other pieces of clothes belonged to Appellant. *Id.* at 141.

Ms. Torres testified that in March of 2017 she was walking her dog when one of Appellant's friends called and said he was going to drop something off for Appellant. *Id.* at 144. When Ms. Torres returned to the Residence, there was a book bag on the porch, and she carried it into the Residence. *Id.* On a subsequent day, Ms. Torres came home from work, and Appellant had a group of friends at the Residence. *Id.* at 145. She observed a handgun sitting

on the arm of the sofa. *Id.* Ms. Torres told Appellant she wanted him to "get rid of" the gun because she is afraid of guns. *Id.*

With regard to the police executing a search warrant at the Residence on April 28, 2017, Ms. Torres testified she was sleeping when the police entered the Residence. *Id.* at 148. She confirmed the police recovered a handgun from the bedroom; however, she denied knowing that the handgun was there prior to the police seizing it. *Id.* at 149.

Ms. Torres testified that, after the police left the residence on April 28, 2017, she called Appellant and told him the police had found a handgun. *Id.* at 150. She admitted she and Appellant argued, and she became "very angry" when Appellant asked her to retrieve one of his telephones from another woman's house. *Id.* at 150-51. She refused to do so. *Id.* at 151.

Ms. Torres testified that as she was cleaning the Residence after the police left she found a box of Christmas lights in the closet. *Id.* at 152. The box felt heavy, and when she looked inside she found another handgun. *Id.* Ms. Torres testified she "panicked," carried the box containing the handgun out to the backyard, and left the box with the rest of the trash. *Id.* at 153. She confirmed that approximately one week later the police returned and seized the handgun from the box. *Id.* at 153-54.

Ms. Torres testified she did not want her own gun because she was afraid of them. *Id.* at 154. She admitted that prior to the instant incidents she would have been able to legally buy a gun if she wanted one, but she had no

desire to do so. ***Id.*** She noted Appellant once suggested she should buy a gun to keep in the house for protection, but she told him she did not want one. ***Id.*** at 155.

Ms. Torres admitted that after the police executed the first search warrant she told one of Appellant's friends via Facebook Messenger that the police had found a gun and arrested Appellant. ***Id.*** at 155-56. The friend asked "if it was a silver or black one." ***Id.*** at 156. She told him it was "a silver one." ***Id.***

Ms. Torres testified that, after Appellant was arrested, he called her from prison and asked her to say the firearms belonged to her. ***Id.*** She also testified she pled guilty to tampering with physical evidence in connection with the instant matter and, consequently, she lost her job. ***Id.*** at 138, 156. She denied ever seeing Appellant manufacturing illegal drugs in the Residence. ***Id.***

At the conclusion of all testimony, the jury convicted Appellant of the offenses indicated *supra*. On April 9, 2019, Appellant was sentenced to an aggregate of ten years to twenty years in prison. On April 15, 2019, Appellant contemporaneously filed a timely, *pro se* post-sentence motion, and a notice of appeal to this Court.

On April 18, 2019, the trial court denied Appellant's post-sentence motion, in part.[3]  Further, on April 18, 2019, the trial court directed Appellant to file a statement pursuant to Pa.R.A.P. 1925(b), and on April 29, 2019, Appellant filed a *pro se* forty-seven page statement pursuant to Pa.R.A.P. 1925(b).[4]  On May 2, 2019, Appellant filed a second notice of appeal. Thereafter, the trial court filed an order disposing of the remaining portions of Appellant's post-sentence motion, and Appellant filed a third notice of appeal on June 6, 2019.  The trial court did not order Appellant to file an additional Rule 1925(b) statement; however, on June 26, 2019, the trial court filed a Pa.R.A.P. 1925(a) opinion.[5]

_____

[3] The trial court noted in its opinion that "due to a typographical error" the trial court inadvertently ruled on only one claim raised in the post-sentence motion and failed to rule on the remaining issues.

[4] We note that Appellant's forty-seven page Rule 1925(b) statement is not "concise."  This Court has found waiver of all issues on appeal where an appellant filed a redundant, non-concise, and incoherent statement.  **See Jiricko v. Geico Ins. Co.**, 947 A.2d 206, 210 (Pa.Super. 2008).  In any event, due to the procedural irregularities in this case, we decline to find waiver on this basis.

[5] Appellant's initial appeal was docketed in this Court at 609 MDA 2019, and his second notice of appeal was docketed at 728 MDA 2019.  Concluding the appeals were duplicative, we dismissed the first appeal.  Moreover, Appellant's third notice of appeal was docketed at 919 MDA 2019; however, we dismissed the third appeal *sua sponte* due to an overdue docketing statement. The instant appeal (728 MDA 2019) was filed at a time when a portion of Appellant's post-sentence motion had yet to be ruled on.  Thus, the instant appeal was prematurely filed.  **See Commonwealth v. Chamberlain**, 658 A.2d 395 (Pa.Super. 1995) (holding where timely post-sentence motions are filed the order denying the post-sentence motions acts to finalize the

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved":

1) Did the trial court err when it failed to determine that the Appellant made a preliminary showing of Affiant's deliberate misstatements at the suppression hearing?

2) Did the Commonwealth fail in satisfying it's [*sic*] burden of proof, production and persuasion that evidence was not illegally obtained from the residence, at the suppression hearing?

3) Did the trial court err in failing to suppress evidence illegally obtained as a result of a defective search warrant?

4) Did the trial court err when it permitted the Commonwealth to introduce hearsay evidence as proof of the matters asserted?

5) Did the Commonwealth misrepresent the facts of the case to prejudice the jury against the Appellant?

6) Was the weight of the evidence in favor of the Appellant and against his guilt?

7) Was Mayra Torres' testimony biased in her own self-interest, contradictory and coerced, thus non-admissible?

8) Was the verdict rendered on speculation, conjecture, and false evidence?

Appellant's Brief at 7 (suggested answers omitted).

Appellant's first, second, and third issues are intertwined and challenge the propriety of the search warrants. Appellant avers the affiant, C.I. Niebel, made numerous deliberate misstatements in the affidavit of probable cause

_____

judgment of sentence). However, since the trial court subsequently entered a final order denying Appellant's post-sentence motion in its entirety, we will treat the premature notice of appeal "as having been filed after entry of [an] order denying post-sentence motions." *See Commonwealth v. Ratushny*, 17 A.3d 1269, 1271 n.4 (Pa.Super. 2011).

for the first search warrant. Specifically, he avers C.I. Niebel made misstatements regarding "the occurance [*sic*] and existence of the drug investigation." Appellant's Brief at 26. Appellant also contends the first search warrant, which was executed by the police on April 28, 2017, was overly broad and lacking in particularity since the warrant did not state what specific cell phone the police were permitted to seize. Finally, he asserts the police's reading of the text messages, as well as examining his Facebook account as displayed on his phone, went beyond the scope of the first search warrant. *Id.* at 24. Thus, Appellant contends the suppression court erred in denying his motion to suppress.

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where...the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa.Super. 2012) (quotation omitted).

Moreover, "[a]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Stilo*, 138 A.3d 33, 35-36 (Pa.Super. 2016) (citation omitted). Also, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006) (quotation marks and quotation omitted).

Regarding Appellant's claim that C.I. Niebel made deliberate misstatements in the affidavit of probable cause for the first search warrant, this Court has held that "[a] search warrant is defective if the issuing authority has not been supplied with the necessary information…[to establish that] a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Huntington*, 924 A.2d 1252, 1255 (Pa.Super. 2007) (citations omitted). Further, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). The standard of proof is preponderance of the evidence. *Id.*, cmt. "[A] defendant at a suppression hearing has the right to test the veracity of the facts recited in the affidavit in support of probable cause." *Commonwealth v. James*, 620 Pa. 465, 69 A.3d 180, 187 (2013)

(citation omitted). When testing the veracity of the facts recited in the affidavit, a defendant must make "a substantial preliminary showing [that] the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit." *Id.* at 188 (citation omitted).

In the case *sub judice*, in rejecting Appellant's claim that C.I. Niebel made deliberate misstatements indicating drug activity was occurring and/or being investigated as to the Residence, the suppression court stated the following:

> [The suppression] court provided [Appellant] with the opportunity to cross-examine C.I. Niebel regarding the alleged misrepresentations. However, [Appellant] is not entitled to relief. [Appellant] claimed that C.I. Niebel made misrepresentations regarding drug activity at the Residence. The testimony presented by C.I. Niebel [at the suppression hearing] established that two controlled purchases of heroin took place between C.S. and [Appellant] at the Residence. Furthermore, C.I. Niebel testified to the existence of C.S., the information provided by C.S. and described the investigation into drug sales by [Appellant] at the Residence. There is no evidence that C.I. Niebel made any misrepresentations of fact in Search Warrant #1. [Appellant's] claim must fail.

Suppression Court Opinion, filed 1/9/19, at 10.

We agree with the suppression court's sound reasoning and find no abuse of discretion.[6] *See Hoppert*, *supra*.

---

[6] We note the suppression court has set forth in detail the averments, which C.I. Niebel made in the affidavit of probable cause with regard to the first search warrant. *See* Suppression Court Opinion, filed 1/9/19, at 2-7. Further, the certified record contains the search warrant and accompanying affidavit of probable cause.

Appellant next claims the first search warrant was overly broad and lacking in particularity since the warrant did not state what specific cell phone the police were permitted to seize, and, therefore, the suppression court should have suppressed the smartphone, which the police seized from Appellant's person. We conclude Appellant is not entitled to relief.

Here, as the suppression court found, the police seized the smartphone from Appellant when he was arrested on April 28, 2017, on Weiser Street after the police had already seized the revolver at his Residence. Suppression Court Opinion, filed 1/9/19, at 7. Accordingly, we conclude C.I. Niebel properly seized the smartphone from Appellant's person incident to his arrest. **See Commonwealth v. Simonson**, 148 A.3d 792 (Pa.Super. 2016) (explaining probable cause to arrest and "search incident to arrest" exception).[7]

Finally, Appellant asserts C.I. Niebel's reading of the text messages, as well as examining his Facebook account as displayed on his smartphone, went beyond the scope of the first search warrant.

In addressing this claim in its Rule 1925(a) opinion, the trial court concluded Appellant waived this specific claim by failing to raise it in the court

_____

[7] In any event, to the extent Appellant avers generally that the first search warrant was "overly broad," we agree with the suppression court that the issue lacks merit. **See** Suppression Court Opinion, filed 1/9/19, at 10-13 (concluding search warrant did not authorize a sweeping search based on generalized suspicions and included an appendix of specific items for which the police were searching).

below. We conclude Appellant did not raise the claim in either his original or supplemental motion to suppress. Accordingly, we agree with the trial court that Appellant waived this claim.[8] *See Commonwealth v. Little*, 903 A.2d 1269, 1272-73 (Pa.Super. 2006) ("appellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal").

In his fourth issue, Appellant contends the trial court erred in admitting at trial several pieces of mail, which the police seized from the Residence, as proof that he actually resided at the Residence. Specifically, Appellant contends the sender's placement of his name and address on the mail constituted inadmissible hearsay.

Assuming, *arguendo*, the trial court erred in admitting the mail as proof of residence, we conclude the error was harmless. At trial, Ms. Torres testified that Appellant was her paramour, and they resided together at the Residence. N.T., 3/18/19, at 137-38. She specifically testified that, during April of 2017, Appellant was in a halfway house, but he continued to live and spend his weekends at the Residence. Accordingly, the mail was merely cumulative of Ms. Torres' testimony regarding the location of Appellant's residence, and

---

[8] In any event, we agree with the trial court that the issue lacks merit. *See* Trial Court Opinion, filed 6/26/19, at 8 (concluding Appellant's cell phone and electronic messages were included in the list of items included in the search warrant).

- 15 -

thus, any error in its admittance was harmless error. *See Commonwealth v. Watson*, 945 A.2d 174, 177 (Pa.Super. 2008) (holding harmless error exists where "the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence.") (citation omitted)).

In his fifth issue, Appellant contends the Commonwealth misrepresented the facts to the jury. Specifically, he contends the prosecutor committed misconduct during closing argument by referring to the text messages from Appellant's smartphone as statements of fact since the text messages were not introduced or admitted into evidence. *See* Appellant's Brief at 45.

In reviewing claims of improper prosecutorial comments, our standard of review "is whether the trial court abused its discretion." *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 198 (1997).

> [W]ith specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments

supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

***Commonwealth v. Jaynes***, 135 A.3d 606, 615 (Pa.Super. 2016) (quotation marks, quotation, and citations omitted).

Here, in addressing Appellant's claim, the trial court relevantly indicated the following:

In the case at bar, [Appellant] raised an objection to the Commonwealth's reference to the text messages retrieved from his smartphone during the Commonwealth's closing argument. [Appellant] argued that the Commonwealth improperly referred to the text messages as proof of a fact even though the messages were not in evidence other than through the testimony of C.I. Niebel. [Appellant] claimed that the Commonwealth said the messages were recovered and implied that the text messages were admitted into the record. Upon review of the trial transcript, [Appellant] is simply incorrect. Prior to [Appellant's] objection, the Commonwealth made the following statement regarding the text messages:

> But there's some other circumstantial evidence that proves that he had the intent and the ability to control that firearm. Investigator Niebel testified to the text messages that were found on the defendant's phone when he was arrested that morning. A text message at 8:37 saying, Mayra, said they found the revolver. Where is the .22? It's an unknown person who sends the text message to [Appellant]. But the person says, where is the .22? That person knew that [Appellant] would know where the .22 is. They know he knew about the firearms. And he says, don't worry about the fu**ing gun. Not only did he know where the firearm is, but he expressed his ability to control it by telling someone else, don't worry about it.

The Commonwealth did not make any statement to the jury that the text messages were recovered and admitted into the

- 17 -

record. In an abundance of caution, the [trial] court instructed the Commonwealth to make it clear that C.I. Niebel viewed the text messages on the cell phone. The Commonwealth continued with their closing argument and complied with the [trial] court's instruction. Furthermore, the Commonwealth was permitted to reference the text messages that were testified to by C.I. Niebel. "[I]t is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt." *Commonwealth v. Thomas*, [618 Pa. 70,] 54 A.3d 332, 338 (2012) (citation omitted). [Appellant] is not entitled to relief.

Trial Court Opinion, filed 6/26/19, at 17-18 (citations to record omitted).

We conclude the trial court did not abuse its discretion, and therefore, we find no merit to Appellant's claim. *See Hall*, *supra*.

Appellant's sixth, seventh, and eighth issues are intertwined and present a challenge to the weight of the evidence. Specifically, Appellant contends Ms. Torres' testimony indicating that he owned the firearms was incredible, thus rendering the jury's verdicts against the weight of the evidence.[9] He contends Ms. Torres shifted the blame to him so that she would receive leniency from the prosecution.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*,

---

[9] Appellant adequately preserved his weight claim in his post-sentence motion. *See* Pa.R.Crim.P. 607(a).

- 18 -

129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. **Commonwealth v. Hopkins**, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. **Talbert**, **supra**.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. **See id.**

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Id.** at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Id.** (quotation marks and quotation omitted).

Here, in rejecting Appellant's weight of the evidence claim, the trial court relevantly indicated:

> In the case at bar, [Appellant] claims the verdict was against the weight of the evidence as there should have been no weight given to the testimony of Ms. Torres. During Ms. Torres' testimony, she disclosed that criminal charges were brought

against her based on this same investigation into [Appellant] and that she had entered a guilty plea to the misdemeanor offense of tampering with physical evidence. Ms. Torres also testified that she was convicted for retail theft sometime prior to 2017. However, despite this information, the verdict was not contrary to the evidence as the jury was presented with a case upon which to convict [Appellant]. The jury evaluated the evidence, determined the credibility of witnesses, including Ms. Torres, and, when assessing the weight of the evidence, believed the evidence presented by the prosecution and rendered a guilty verdict. Therefore, the verdict was consistent with the evidence presented and did not shock [one's] sense of justice.

Trial Court Opinion, filed 6/26/19, at 16.

We conclude the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence. **Talbert**, **supra**. We note the jury was free to determine the weight and inferences to be drawn from Ms. Torres testimony and what impact, if any, her own criminal charges and history had on her veracity. To the extent Appellant requests that we re-weigh the evidence and assess the credibility of the witnesses presented at trial, we decline to do so as it is a task that is beyond our scope of review. **See Commonwealth v. Collins**, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact").

For all of the aforementioned reasons, we affirm Appellant's judgment of sentence.[10]

_____

[10] On December 2, 2019, Appellant filed in this Court an "Application for Relief" requesting that we not consider the Commonwealth's brief. We grant

Appellant's "Application for Relief" is granted; Judgment of Sentence is affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/27/2020

---

Appellant's motion. While the cover of the Commonwealth's brief correctly identifies Appellant's case, the content thereof does not pertain to Appellant's case. Accordingly, we decline to consider the Commonwealth's brief in this matter.