J-A29007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
          v.   :
  :
  :
  :
LAMAR LEWIS   :
  :
        Appellant   :   No. 2783 EDA 2015

Appeal from the Judgment of Sentence July 17, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007857-2013

BEFORE:   LAZARUS, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:         **FILED NOVEMBER 29, 2017**

Lamar Lewis appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions of two counts of possession of firearms prohibited.[1] After our review, we affirm.

The trial court summarized the facts as follows:

On December 8, 2012, [Lewis] and his then girlfriend[,] Veronica Jackson[,] went to a gun store located in Feasterville. Jackson bought a Beretta Nano nine-millimeter firearm, which she brought back to her house at 6132 N. Lambert Street. On December 9, 2012, [Lewis] and Jackson attended a gun show. At the gun show, Jackson bought a Beretta HiPoint nine-millimeter firearm and a .40 caliber Smith and Wesson HiPoint firearm, which she brought back to her house. At the time Jackson bought the firearms, [Lewis] and Jackson had been living together at 6132 N. Lambert Street for two years, and they had been dating for three and a half years. Their relationship was periodically interrupted because of [Lewis's] relationship with another woman, Vikki Scott. On May 5, 2013, Jackson broke up with [Lewis] due to his relationship with

---

[1] 18 Pa.C.S. § 6105.

---

*   Retired Senior Judge assigned to the Superior Court.

> Vikki Scott. Jackson told [Lewis] not to return to her house. The next day, Jackson was out with her daughter when [Lewis] called her to apologize. When Jackson returned home, she found [Lewis] inside her house. Jackson asked [Lewis] for the keys to her house and car that she previously gave to him. [Lewis] refused to give her the keys and left the house. He then entered a vehicle that they shared and was parked across the street. Before [Lewis] drove away, Jackson observed several items that were loaded into the vehicle and which [Lewis] had taken from the house.
>
> On May 8, 2013, Jackson contacted police to report the vehicle as stolen. On that same day, Jackson discovered that the nine-millimeter HiPoint was missing from behind the sofa and that the .40 caliber HiPoint, as well as [Lewis's] clothes, were missing from [Lewis's] dresser drawer.

Trial Court Opinion, 4/28/16, at 1-2 (citations to record omitted).

Police obtained a search warrant for Vikki Scott's residence at 433 W. Hansberry Street; the warrant identified the items to be searched for and seized as "A black Smith and Wesson 9mm, a black Beretta .45 caliber, and correspondence addressed to Lamar Lewis or Vikki Scott, anything else of evidentiary value." *Id.* at 3. On May 10, 2013, police executed the search warrant and recovered a black Smith and Wesson .40 caliber HiPoint handgun and a black Beretta nine-millimeter HiPoint handgun, as well as ammunition, a trigger lock, a gun wrench, and a letter from Philadelphia Gas Works to Lewis with the address of 433 W. Hansberry Street, 2F. Lewis returned to 433 W. Hansberry Street as police were executing the warrant, at which point Lewis was arrested.

Lewis appeared for a preliminary hearing on June 18, 2013. On August 2, 2013 he filed a motion to suppress, which was denied. On September 6, 2013 he moved for modification of bail, on November 4, 2013 he moved for

consolidation, and on December 2, 2013, he filed a Pa.R.Crim.P. 600 motion to dismiss. On May 11, 2015, Lewis filed another motion to dismiss for lack of personal and subject matter jurisdiction, which was denied. Following trial on May 13, 2015, a jury convicted Lewis of two counts of possession of firearms prohibited.

Lewis filed a post-trial motion, which was denied. On July 17, 2015, the court sentenced Lewis to five to ten years' incarceration on one count, and a consecutive term of one day to ten years' incarceration on the second count. Lewis filed a timely motion for reconsideration of sentence, which was denied on August 21, 2015. Lewis filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. He raises the following issues for our review:

1. Whether the verdicts were against the weight of the evidence?

2. Whether the court erred in denying [Lewis's] motion to dismiss under Rule 600(G)?

3. Whether there was prosecutorial misconduct during the closing argument?

4. Whether the court abused its discretion in denying the motion to suppress?

Appellant's Brief, at 8.

First, Lewis argues the verdict is against the weight of the evidence. This claim is waived.

Pennsylvania Rule of Criminal Procedure 607 governs the procedure by which weight of the evidence claims shall be considered by the trial court and preserved for appellate review. Rule 607 provides, in relevant part:

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). Here, Lewis filed a post-sentence motion, but he did not include his weight of the evidence claim in that motion. *See* Post-Sentence Motion, 7/22/15. Although Lewis did raise the issue in his Rule 1925(b) Statement, and the trial court addressed it in its Rule 1925(a) opinion, the claim, nonetheless, is waived. The question is not simply a matter of whether the trial court addressed it, but, rather, the point at which the trial court was able to grant a new trial based on the weight claim. The trial court had no jurisdiction to do so after the notice of appeal was filed. In *Commonwealth v. Sherwood*, 982 A.2d 483 (Pa. 2009), the Pennsylvania Supreme Court explained:

The fact that Appellant included an issue challenging the verdict on weight of the evidence grounds in his [Rule] 1925(b) statement and the trial court addressed Appellant's weight claim in its Pa.R.A.P. 1925(a) opinion did not preserve his weight of the evidence claim for appellate review in the absence of an earlier motion. Pa.R.Crim.P. 607(A). . . . Appellant's failure to challenge the weight of the evidence before the trial court deprived that court of an opportunity to exercise discretion on the question of whether to grant a new trial. Because "appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence," *Commonwealth v. Widmer*, [] 744 A.2d 745,

- 4 -

753 ([Pa.] 2000), this Court has nothing to review on appeal. We thus hold that Appellant waived his weight of the evidence claim because it was not raised before the trial court as required by Pa.R.Crim.P. 607.

*Id.* at 494 (some citations omitted). We conclude, therefore, that Lewis has waived his challenge to the weight of the evidence.

Next, Lewis argues that the court erred in denying his Rule 600 motion to dismiss. This Court explained Rule 600 at length in **Commonwealth v. Ramos**, 936 A.2d 1097 (Pa. Super. 2007) (en banc).

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth. So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters, courts must

- 5 -

carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Id.* at 1100 (brackets, ellipses, and citation omitted).

Rule 600 provides that where a written complaint is filed against a defendant, trial in a court case shall commence within 365 days from the date on which the complaint is filed. Pa.R.Crim.P. 600(A)(2)(a). If trial takes place beyond 365 days (plus excludable time as set forth in Rule 600(C)),[2] then the defendant is entitled to dismissal with prejudice. Pa.R.Crim.P. 600(D)(1).[3]

_____

[2] Rule 600(C) provides that period of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation. Pa.R.Crim.P. 600(C).

[3] Rule 600 takes into account both "excludable time" and "excusable delay." *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004). "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; any period of time for which defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; and/or (b) any continuance granted at the request of the defendant or the defendant's attorney. *Id.* (citing Pa.R.Crim.P. 600(C)). The "due diligence" required under Rule 600(C)(1) pertains to the Commonwealth's efforts to apprehend the defendant. *Id.* at 1241 n. 10. The other aspects of Rule 600(C) defining "excludable time" do not require a showing of due diligence by the Commonwealth. *Id*. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays that occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence. *See id.* at 1241–42 (explaining manner in which excludable time, excusable delay and due diligence are to be determined).

Here, the complaint against Lewis was filed on May 11, 2013, and thus the mechanical run date was May 11, 2014. Pa.R.Crim.P. 600(A)(2)(a). Because Lewis' trial began on May 11, 2015, one year beyond the run date, we must next examine whether any periods of excusable time existed, so as to create an adjusted run date. **Ramos**, **supra**.

The trial court determined that there was excusable time attributable to judicial delay of 371 days and excludable time attributable to the defense of 26 days,[4] for a total of 397 days. The adjusted run date, therefore, was June 12, 2015. Trial commenced one month before that date, on May 11, 2015.

Lewis argues, however, that the time period between May 5, 2014 and January 12, 2015 should not have been excluded because the Commonwealth filed a "prior bad acts" motion on May 12, 2014, and thus was not duly diligent. The Commonwealth, however, was ready to proceed to trial on May 5, 2014 without the benefit of a ruling on its motion. **See** Trial Court Opinion, **supra** at 5. Further, the trial court was on trial in another case on May 5-6, 2014. Lewis's trial, therefore, was continued to January 12, 2015. On that date, the court was conducting another unrelated trial, and Lewis' trial was continued to May 2015. **See Commonwealth v. Malgieri**, 889 A.2d 604, 607 (Pa. Super. 2005) (judicial delay may serve as basis for extending time in which Commonwealth may commence trial so long as prosecutor was prepared to commence trial prior to expiration of mandatory period but court, due to

_____

[4] Lewis concedes this time is excludable time attributable to the defense.

- 7 -

scheduling difficulties, is unavailable). We find no abuse of discretion. *Ramos*, *supra*.

In his third claim, Lewis argues the court erred in denying his objection to the prosecutor's remarks during closing arguments. He contends the prosecutor's statement amounted to prosecutorial misconduct and, therefore, he was denied his right to a fair trial.

In accord with the long-standing principle that a "prosecutor must be free to present his or her arguments with logical force and vigor," this Court has permitted vigorous prosecutorial advocacy "as long as there is a reasonable basis in the record for the [prosecutor's] comments." *Commonwealth v. Robinson*, 864 A.2d 460, 516–17 (Pa. 2004). Prosecutorial comments based on the evidence or reasonable inferences therefrom are not objectionable, nor are comments that merely constitute oratorical flair. *Commonwealth v. Tedford*, 960 A.2d 1, 33 (Pa. 2008). Any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. *Robinson*, *supra* at 517.

The standard by which the court considers allegations of improper prosecutorial comments is a stringent one:

> Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

*Tedford*, *supra* at 33.

Here, Lewis points to the following statement by the prosecutor: "You can possess something even if you don't have it on your body, even if it's just in the house. So if he is in a house living with Veronica Jackson [on December 9, 2012] and he knows that the gun is there . . . ." Appellant's Brief, at 22. Lewis cites to the notes of testimony of trial, at 5/14/15, 90-92.[5] He argues that the prosecutor's statement "urged the jury to consider facts to support defendant's conviction of 18 Pa.C.S. § 6105(A)(1) from December 9, 2012[,] that formed the basis of acquittal under the statute." Appellant's Brief, at 22. To state it more clearly, the prosecutor was referring to underlying facts from a prior case at which Lewis was found not guilty of violating section 6105 for possessing a gun on December 9, 2012 *when Jackson bought the guns*. The prosecutor's theory of the case was that Lewis knew where the guns were when Jackson bought them while he lived with Jackson, and that he moved the guns with him when he moved from Jackson's home to 433 W. Hansberry Street in May of 2013. This was evidence admitted at trial and the prosecutor

_____

[5] We point out that the record before us does not contain the notes of testimony from trial to which Lewis cites. **See** Pa.R.A.P. 1911(a) ("The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 5000.1 et seq. of the Pennsylvania Rules of Judicial Administration[.]"). **See Commonwealth v. Williams**, 715 A.2d 1101, 1103 (Pa. 1998); **see also Commonwealth v. Steward**, 775 A.2d 819, 833 (Pa. Super. 2001) (noting it was not responsibility of trial court to order notes of transcript of defense counsel's closing as Rule 1911 "makes it abundantly plain that it is the responsibility of the Appellant to order all transcripts necessary to the disposition of his appeal"). Because the parties and the trial court do not dispute the content of the statement, or the court's curative instruction, we will not find waiver.

could properly summarize it in closing. **See *Commonwealth v. Hutchinson***, 25 A.3d 277, 307-08 (Pa. Super. 2011) (it is entirely proper for prosecutor to summarize evidence presented, to offer reasonable deductions and inferences from evidence and argue that evidence establishes defendant's guilt).

Finally, Lewis claims the court erred in denying his motion to suppress. A magistrate's finding of probable cause "must be based on facts described within the four corners of the affidavit[,]" ***Commonwealth v. Stamps***, 427 A.2d 141, 143 (Pa. 1981), and "our scope of review of a suppression court's ruling [on a magistrate's finding of probable cause] is confined primarily to questions of law." ***Id.*** (citing ***Commonwealth v. Sharp***, 683 A.2d 1219, 1221 (Pa. Super. 1996)). ***See also Commonwealth v. Ryerson***, 817 A .2d 510, 513 (Pa. Super. 2003); Pa.R.Crim.P. 203.

After our review of the parties' briefs, the record, and the relevant law, we conclude that the Honorable Daniel J. Anders has properly disposed of this claim in his Pa.R.A.P. 1925(a) opinion. ***See*** Trial Court Opinion, 4/28/16, at 6-7 (based on totality of circumstances, fact contained within four corners of warrant were sufficient for magistrate to find probable cause; affidavit of probable cause stated: complainant Jackson reported specific types of firearms missing from her residence; only Jackson and Lewis knew of firearms; Lewis was currently residing with Vikki Scott; search of motor vehicle records confirmed Scott's address; and, officer confirmed Lewis had prior conviction and was prohibited from possessing firearm).

For the foregoing reasons, we affirm the judgment of sentence. The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION—CRIMINAL

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0007857-2013

VS.     :     2783 EDA 2015     **FILED**

LAMAR LEWIS     :     APR **2 8** 2016

## OPINION

Criminal Appeals Unit
First Judicial District of PA

Following a jury trial, Defendant Lamar Lewis was convicted of two counts of violating Section 6105 of the Uniform Firearms Act. The trial court sentenced Defendant to a guideline sentence of 5 years and 1 day to 20 years of incarceration. Defendant filed a timely appeal in which he argues: (1) the trial erred by denying his motion dismiss pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure, (2) the trial court erred in denying Defendant's motion to suppress, (3) the evidence was insufficient to support the convictions, (4) the verdict was against the weight of the evidence, and (5) the trial court erred by overruling the objection of defense counsel to statements made by the prosecutor during closing arguments. For the reasons stated below, the Superior Court should affirm the judgment of sentence.

## FACTUAL BACKGROUND

### 1.     Defendant's Former Girlfriend Purchases Two Firearms

On December 8, 2012, Defendant and his then girlfriend Veronica Jackson went to a gun store located in Feasterville. Jackson bought a Beretta Nano nine millimeter firearm, which she brought back to her house at 6132 N. Lambert Street. N.T. 05/13/2015 at 8-13, 30. On December 9, 2012, Defendant and Jackson attended a gun show. At the gun show, Jackson bought a Beretta HiPoint nine-millimeter firearm and a .40 caliber Smith and Wesson HiPoint firearm, which she brought back to her house. *Id.* at 17-23, 25-29.

CP-51-CR-0007857-2013 Comm. v. LEWIS, LAMAR
Opinion

7439766721

At the time Jackson bought the firearms, Defendant and Jackson had been living together at 6132 N. Lambert Street for two years, and they had been dating for three and a half years. Their relationship was periodically interrupted because of Defendant's relationship with another woman, Vikki Scott. *Id.* at 13-15.

On May 5, 2013, Jackson broke up with Defendant due to his relationship with Vikki Scott. Jackson told Defendant not to return to her house. The next day, Jackson was out with her daughter when Defendant called her to apologize. When Jackson returned home, she found Defendant inside her house. Jackson asked Defendant for the keys to her house and car that she previously gave to him. Defendant refused to give her the keys and left the house. He then entered a vehicle that they shared and was parked across the street. Before Defendant drove away, Jackson observed several items that were loaded into the vehicle and which Defendant had taken from the house. *Id.* at 40-48.

2.      Defendant's Former Girlfriend Reports The Two Firearms As Stolen

On May 8, 2013, Jackson contacted police to report the vehicle as stolen. On that same day, Jackson discovered that the nine-millimeter HiPoint was missing from behind the sofa and that the .40 caliber HiPoint, as well as Defendant's clothes, were missing from Defendant's dresser drawer. *Id.* at 48-50.

On May 8, 2013, Officer Brett Werner arrived at Jackson's residence and wrote a police report that included a description of the weapons and ammunition that were missing from her home. Officer Werner then brought Jackson to Northwest Detectives to provide a full statement. Jackson provided a written statement to Detective Sanders in which she stated that Defendant had taken the .40 caliber HiPoint and the nine-millimeter HiPoint from her home. Jackson further stated that Defendant was residing at his new girlfriend's residence (Vicki Scott's) located at 433 W. Hansberry Street. Jackson told Detective Sanders that she believed Defendant brought the

-2-

guns to Scott's house. Jackson provided the sales receipts containing the serial numbers for the two missing guns. Jackson reviewed, signed and dated the statement. *Id.* at 50-54, 56, 63-64; N.T. 05/12/2015 at 33-37, 53-55, 90.

Later that same night, Detective Sanders met with Jackson at her residence. Jackson then provided a second statement to Detective Sanders wherein she positively identified a photograph of Defendant. When shown the photograph, Jackson wrote on the photograph: my "ex-boyfriend Lamar Lewis took my handguns." On May 9, 2013, based upon the information provided by Jackson, Detective Sanders obtained a search warrant for 433 W. Hansberry Street. The search warrant identified the items to be searched for and seized as "A black Smith and Wesson 9mm, a black Beretta .45 caliber, and correspondence addressed to Lamar Lewis or Vikki Scott, anything else of evidentiary value." The warrant confirmed Vikki Scott's residence as 433 W. Hansberry Street, Apt. 2 as a result of a records check of the bureau of motor vehicles. N.T. 5/12/2015 at 44-47, 55-61; Affidavit No. 174062.

### 3. The Search of Defendant's New Girlfriend's Home

On May 10, 2013, Detective Sanders executed the search warrant for 433 W. Hansberry Street. From inside a closet in the laundry room, Detective Druding observed a black "ecco" brand shoebox. Detective Druding opened the shoebox and recovered a black Beretta nine-millimeter HiPoint handgun, a black Smith and Wesson .40 caliber HiPoint handgun with a cracked handle, two black nine millimeter magazines containing a total of 11 rounds, an empty black .40 caliber magazine, two boxes of .40 caliber ammunition containing a total of 90 rounds, one box containing 50 rounds of nine-millimeter ammunition, a book titled "Exodus," one polaroid photograph of Defendant and another female (not Jackson or Scott), a small white box marked "HiPoint C9 Holster" containing a ghost ring sight and allen wrench for a HiPoint handgun, a trigger lock, and a gun wrench. From the master bedroom, police recovered a letter

-3-

from Philadelphia Gas Works to Defendant with the address of 433 W. Hansberry Street, 2F. *Id.* at 49-51, 76-85, 93, 98, 102-106.

As police searched the home, Defendant returned to 433 W. Hansberry Street. Instead of parking in the available parking spaces outside of 433 W. Hansberry Street, Defendant parked on the 5100 block of Morris Street, which was a block and a half away from his house. Upon his arrest, Defendant told Officer Lally that his address was 433 W. Hansberry Street, 2nd Floor. *Id.* at 106-113.

## DISCUSSION

1. The Trial Court Properly Denied Defendant's Motion To Dismiss

Defendant asserts that the trial court improperly denied his motion to dismiss pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure. The standard of review in an appeal from an order denying a motion to dismiss under Rule 600 is as follows:

> When reviewing a trial court's decision in a Rule 600 case, an appellate court will reverse only if the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused. The appellate court's scope of review is limited to the record evidence from the Rule 600 hearing and the findings of the lower court, viewed in the light most favorable to the prevailing party.

*Commonwealth v. Selenski*, 994 A.2d 1083, 1087 (Pa. 2010).

Rule 600 has the "dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's interest to effective prosecution of criminal cases." *Commonwealth v. Bradford*, 46 A.3d 693, 701 (Pa. 2012). There is a three step analysis to determine if there is a violation of Rule 600. First, the court calculates the mechanical run date, which is 365 days from the date on which the criminal complaint is filed. Second, pursuant to subsection (C) of Rule 600, the court excludes all periods of delay except delay "caused by the

-4-

Commonwealth when the Commonwealth has failed to exercise due diligence." Third, the court adds the "excludable time" under subsection (C) to the mechanical run date to produce an adjusted run date. If the defendant has not been brought to trial within the adjusted run date, the defendant may file a written motion requesting the charges be dismissed. Pa.R.Crim.P. 600(D).

"Excludable time" generally includes (1) delay caused by or attributable to the defendant or defense, (2) delay attributable to the judiciary[1], and (3) delay that occurs "as a result of circumstances beyond the control of the Commonwealth and despite its due diligence." *See* Comments to Pa.R.Cr.P. 600 (entitled, *Computation of Time*). The Commonwealth has the burden of proving, by a preponderance of the evidence, that it exercised due diligence and that the circumstances surrounding the delay of trial were beyond the Commonwealth's control. *Bradford*, 46 A.3d at 701. Due diligence is a "fact-specific [inquiry,] to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Id.* (quoting *Selenski*, 994 A.2d at 1089).

Here, Defendant concedes that the time between May 28, 2013 through June 17, 2013 and that the time between August 13, 2013 and August 19, 2013 is excludable, which is a total of 26 days. On the trial dates of May 5, 2014, and January 12, 2015, the trial court was conducting trials on unrelated matters and thus was unavailable to preside over Defendant's trial.[2] On both May 5, 2014[3] and January 12, 2015, the Commonwealth was ready to proceed to trial. As a

---

[1] Pennsylvania courts have held that "judicial delay may serve as a basis for extending the period of time in which the Commonwealth may commence trial so long as the prosecutor was prepared to commence trial prior to the expiration of the mandatory period but the court, because of scheduling difficulties or the like, was unavailable." *Commonwealth v. Malgieri*, 889 A.2d 604, 607 (Pa. Super. Ct. 2005).

[2] On May 5, 2014 and May 6, 2014, the trial court was on trial on *Commonwealth v. Vaughn Robinson*. On January 12, 2015, the quarter sessions file notes that the court was on trial and that time was ruled excludable.

[3] The trial court determined that the Commonwealth was ready to proceed to trial on May 5, 2014 without the benefit of its Rule 404(b) motion. N.T. 05/11/2015 at 11.

-5-

result, the excludable time attributable to judicial delay is 371 days. The total amount of excludable time is 397 days. N.T. 05/11/2015 at 10-14.

Because the criminal complaint was filed on May 11, 2013, the mechanical run date was May 11, 2014. Adding 397 days of excludable time to the mechanical run date produces an adjusted run date of June 12, 2015. Defendant's trial commenced on May 11, 2015, which was within the adjusted run date. As a result, the trial court did not abuse its discretion in denying Defendant's Rule 600 motion to dismiss.

2.    The Trial Court Properly Denied Defendant's Motion To Suppress

Defendant asserts that the trial court improperly denied his motion to suppress because the facts contained within the "four corners" of the warrant lacked probable cause that the firearms would be located at the address searched. The standard of review in an appeal from an order denying a motion to suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

In reviewing a claim of whether a search warrant was invalid within its four corners, appellate courts review whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *Commonwealth v. Huntington* 924 A.2d 1252 (Pa. Super. Ct. 2007). This review is limited to the factual allegations contained within the four corners of the supporting affidavit. *Commonwealth v. Dukeman*, 917 A.2d 338 (Pa. Super. Ct. 2007).

-6-

Courts utilize the totality of the circumstances test to determine whether probable cause exists for the issuance of a search warrant. *Huntington*, 924 A.2d at 1255. Courts recognize that the issuing magistrate makes a "practical common sense assessment" of whether -- "given all the circumstances set forth in the affidavit" -- a "fair probability" exists that contraband or evidence of a crime will be found in a particular place. *Id.* Probable cause exists where there is only a probability of criminal activity, not a *prima facie* showing of such activity. *Dukeman*, 917 A.2d at 341.

Here, based on the totality of the circumstances, the facts contained within the "four corners" of the warrant were sufficient for the magistrate's finding of probable cause. The affidavit of probable cause states that the complainant, Veronica Jackson, reported to Detective Sanders the type of firearms that were missing from her residence and where in the residence they were last seen. The affidavit of probable cause further states that (1) other than Jackson, only Defendant knew about the firearms and that they were stored in his dresser drawer; (2) Jackson discovered the firearms missing only two days after Defendant returned to take his belongings; and (3) Defendant was currently residing with his other girlfriend Vikki Scott. Based on the information provided by Jackson, Detective Sanders conducted a search of the bureau of motor vehicle records and confirmed that Scott resided at 433 W. Hansberry Street, Apt. 2. Detective Sanders also confirmed that Defendant had a prior conviction and was prohibited from possessing a firearm. All of these facts were specifically set forth in the warrant.

Given all of these facts and circumstances set forth in the affidavit of probable cause, there was sufficient probable cause contained in the four corners of the warrant that the stolen firearms would be found at Scott's residence. *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007).

-7-

### 3. There is Sufficient Evidence to Support the Convictions

Defendant claims the evidence was insufficient to prove the possession element of a violation of Section 6105 of the Uniform Firearms Act. To sustain a conviction under Section 6105, there must be sufficient evidence to prove beyond a reasonable doubt that Defendant possessed a firearm and that he was convicted of an enumerated offense that prohibited him from possessing, using, controlling, or transferring a firearm. Section 6105 defines "firearm" as any weapon that is "designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105; *Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa. Super. Ct. 2009).

Constructive possession is defined as "conscious dominion," which itself is defined as the power to control the contraband and the intent to exercise that control. *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986). Constructive possession may be established by the totality of the circumstances. *Id.* "Individually, the circumstances may not be decisive; but in combination, they may justify an inference that the accused had both the power to control and the intent to exercise that control . . . ." *Commonwealth v. DeCampli*, 364 A.2d 454, 456 (Pa. Super. Ct. 1976).

Here, there is sufficient evidence to prove beyond a reasonable doubt that Defendant constructively possessed the firearms recovered from 433 W. Hansberry Street. Defendant received a letter from a utility company addressed to him at 433 W. Hansberry Street. He told Officer Lally that he resided at 433 W. Hansberry Street. The firearms recovered by police matched the sales records that Jackson provided to police and that were previously stored at Jackson's home. Defendant was the only person beside Jackson who knew where Jackson stored the firearms in her residence and Defendant was the only person who could have accessed them from her residence, *i.e.*, Defendant possessed a key to Jackson's residence. Jackson twice stated

-8-

to the police that she believed that Defendant stole her firearms. And, last, when the firearms were recovered from inside of 433 W. Hansberry, they were found inside a shoebox that also contained a photo of Defendant with yet another female, *i.e.*, not Scott or Jackson.

Viewing this direct and circumstantial evidence in the light most favorable to the Commonwealth, there was sufficient evidence[4] to support Defendant's convictions under Section 6105.

### 4. The Verdict Was Not Against The Weight Of The Evidence

Defendant asserts that the verdict was against the weight of the evidence. When evaluating the weight of the evidence, the standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, [the Superior Court] may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. Super. Ct. 2003).

The trial court presided over the entire trial and had the opportunity to observe the demeanor of the witnesses who testified as well as their manner of testifying. Based upon those observations and the consistency of their testimony, there is no basis to disturb the jury's credibility determinations that are imbedded within their verdict. Moreover, in light of the overwhelming evidence of Defendant's guilt discussed above, the verdict is not contrary to the evidence and does not shock one's sense of justice.

---

[4] At trial, Detective Walsh testified to the operability of both firearms. N.T. 05/13/2015 at 128-131, 136-137. Defendant stipulated that he was prohibited from possessing a firearm under Section 6105.

-9-

### 5. The Trial Court Did Not Abuse Its Discretion by Denying Defendant's Objection During Closing Statements

Defendant argues that the trial court erred by denying his objection to facts mentioned by the prosecutor during his closing statement. Courts review claims of prosecutorial misconduct under an abuse of discretion standard. *Commonwealth v. Lopez*, 57 A.3d 74, 84 (Pa. Super. Ct. 2012). Consideration of this claim focuses on whether the defendant was deprived of a fair trial, not a perfect trial. *Commonwealth v. Solomon*, 25 A.3d 380, 383 (Pa. Super. Ct. 2011). A prosecutor's statements to the jury do not occur in a vacuum and must be viewed in context. *Id.* Not every inappropriate remark by a prosecutor constitutes reversible error. *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super. Ct. 2005). Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict. *Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa. Super. Ct. 2008).

Here, at the beginning of his closing argument, the prosecutor stated "you can possess something even if you don't have it on your body, even if it's just in the house. So if he is in a house living with Veronica Jackson [on December 9, 2012] and he knows that the gun is there." N.T. 5/14/2015 at 90. Defendant objected that the prosecutor was improperly arguing facts that formed the basis of an acquittal for an alleged violation of Section 6105 from December 9, 2012. The trial court overruled Defendant's objection and later noted that the prosecution was permitted to put forth its theory of the case - *i.e.*, that Defendant moved the firearms from Jackson's residence to 433 W. Hansberry Street on or about May 10, 2013. *Id.* at 95. Such argument is not improper because prosecutors are permitted to summarize the evidence admitted at trial. *See Commonwealth v. Hutchinson*, 25 A.3d 277 (Pa Super. Ct. 2011) (it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and

-10-

inferences from the evidence, and to argue that the evidence establishes defendant's guilt). Additionally, after the prosecutor's closing and just before the jury retired to deliberate, the trial court cured any potential prejudice by instructing the jury with the specific date of the alleged violations of Section 6105, *i.e.*, on or about May 13, 2013 – not December 9, 2012. *Id.* at 94; *Commonwealth v. Linder*, 425 A.2d 1126 (Pa. Super. Ct. 1981) (finding that no prejudice occurred after the trial court provided a cautionary instruction to the jury following the prosecutor's remark that there was no question the defendant was guilty).

As such, there was no prosecutorial misconduct. And, even if there were, any improper argument was cured through the trial court's instruction to the jury.

CONCLUSION

For the foregoing reasons, the appellate court should affirm the judgment of sentence.

BY THE COURT:

DANIEL J. ANDERS, JUDGE
Dated: April 28, 2016

-11-