J-S18024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| KIRBY JOHN MARTIN | : | |
| Appellant | : | No. 1609 MDA 2018 |

Appeal from the PCRA Order Entered August 29, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000837-2015,
CP-01-CR-0000884-2015

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| KIRBY JOHN MARTIN | : | |
| Appellant | : | No. 1773 MDA 2018 |

Appeal from the PCRA Order Entered August 29, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000485-2013

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| KIRBY JOHN MARTIN | : | |
| Appellant | : | No. 1774 MDA 2018 |

Appeal from the Order Entered August 29, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000837-2015

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |

J-S18024-19

<table>
<tr><td></td><td>:</td><td>PENNSYLVANIA</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>KIRBY JOHN MARTIN</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Appellant</td><td>:</td><td>No. 1775 MDA 2018</td></tr>
</table>

Appeal from the PCRA Order Entered August 29, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000884-2015

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.*

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 18, 2019**

Appellant Kirby John Martin appeals from the order denying his first, timely Post Conviction Relief Act[1] (PCRA) petition following an evidentiary hearing.  Appellant's PCRA counsel has filed a petition to withdraw in this Court and a **Turner**/**Finley** brief.[2]  We affirm and grant PCRA counsel's petition to withdraw.

This Court previously set forth the relevant facts of this appeal as follows:

> On May 17, 2015, Appellant rented room 114 at the Three Crowns Motor Lodge in Gettysburg.  Appellant and Paige Morris stole an axe and five firearms (45 Long Colt pistol revolver, Just Right carbine nine millimeter assault rifle, Circuit Judge 45 Long Colt rifle, double barrel shotgun, and a starter pistol) . . . and transported them back to room 114.   [The stolen weapons

---

* Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

- 2 -

represented some of the proceeds from multiple residential burglaries Appellant and his cohorts committed in Gettysburg Borough and Cumberland Township.] Appellant photographed the firearms on the bed in room 114, and used the photographs in text conversations with different people while attempting to sell the firearms. After handling each firearm, Appellant wiped it clean with a bandana and hid it under the mattress.

On the evening of May 19, and into the early morning hours of May 20, Nathan Gilbert and Autumn Doyle drank alcohol and consumed cold medicine with Appellant and Morris in room 114. At approximately 12:30 a.m., Appellant gave his wallet to Morris for safekeeping, and he and Gilbert left the motel room. Appellant placed the 45 Long Colt pistol under the driver's seat of Doyle's Geo Prizm, and drove away from the motel with Gilbert.

At 3:45 a.m. several officers were dispatched to neighboring Cumberland Township for suspicious individuals who were walking around residences with flashlights. Upon hearing that police were on their way, Appellant and Gilbert fled from the immediate area in the Geo Prizm. Appellant stopped on Maple Avenue and parked the vehicle with the right hand tires on the grass. Appellant and Gilbert exited the vehicle and ran in opposite directions, agreeing to meet later at a nearby laundromat.

Dispatch notified responding police that the suspicious individuals had fled the area in a vehicle. Upon arriving in the area, Sergeant Larry Weikert observed a Geo Prizm parked on Maple Avenue; it was empty but still hot to the touch. Officer Eric Yost looked through the window of the vehicle and observed a loaded 45 Long Colt pistol revolver on the floorboard of the driver's seat, next to the gas pedal.

The officers canvassed the surrounding area in an attempt to locate the occupants of the vehicle, including the area outside a laundromat approximately 500 yards away. On the initial pass, Sergeant Weikert did not observe anyone in the area. On a second pass outside the laundromat, at approximately 4:20 a.m., Sergeant Weikert observed Appellant lying on a bench. Appellant was sweating profusely and breathing heavily. Sergeant Weikert approached Appellant and learned that Appellant was staying at the Three Crowns Motor Lodge, and was "waiting on a ride from [Autumn Doyle,]" who was also staying in room 114.

- 3 -

Officers conducted a weapons patdown of Appellant, and located a cell phone and a key for room 114 at the Three Crowns Motor Lodge. Sergeant Weikert proceeded to the motel room. Doyle and Morris, still intoxicated, answered the door. The room was secured, and a search warrant was executed on the room at 2:30 p.m. Two firearms (the Just Right carbine nine-millimeter assault rifle and the Circuit Judge 45 Long Colt rifle) were located under the mattress of one of the beds in the motel room, along with shotgun shells, an axe, and a receipt for one of the firearms from Gander Mountain, in the name of Kanyon Crutcher. Appellant's driver's license was found in a wallet inside Morris's purse, which was lying on a bed in the room.

A search warrant was also obtained for the cell phones of Appellant and Gilbert. A search of Appellant's phone revealed: (1) selfies of Appellant in room 114 at Three Crowns Motor Lodge; (2) photographs of the Just Carbine and 45 Long Colt revolver on the bedspread in Room 114, dated 5/19/2015; (3) photograph of the Circuit Judge on the bedspread in Room 114, dated 5/19/2015; (4) photograph of Appellant and Morris; (5) text message conversations about selling the firearms; and (6) several calls between Appellant and Gilbert, and Appellant and Morris, between 3:54 a.m. and 4:22 a.m. on May 20, 2015. A search of Gilbert's cell phone revealed a photograph of Appellant with the Just Right carbine and a photograph of the shotgun on the bedspread in Room 114. Gilbert was apprehended at 8:00 a.m. that morning.

*Commonwealth v. Martin*, 787 MDA 2017, at 1-4 (Pa. Super. filed Jan. 4, 2018) (unpublished mem.) (record citation omitted).

At docket number 837-2015, the Commonwealth charged Appellant with multiple counts of burglary and persons not to possess firearms, which were related to offenses committed at residences in Cumberland Township. At docket number 884-2015, the Commonwealth charged Appellant with multiple counts of burglary and persons not to possess firearms,[3] which were related to offenses committed at residences in Gettysburg Borough.

---

[3] 18 Pa.C.S. § 3502(a)(1), and 18 Pa.C.S. § 6105(a)(1), respectively.

On September 28, 2015, the Commonwealth filed a notice of trial joinder, seeking to try all of the charges together. The trial court ultimately granted the Commonwealth's joinder request. Prior to trial, Appellant filed a motion to sever, seeking to proceed to trial on the firearms charges only. The trial court granted Appellant's motion to sever on January 7, 2016.

On January 27, 2016, a jury convicted Appellant of four counts of persons not to possess firearms. Appellant proceeded to a sentencing hearing on April 18, 2016, where the trial court imposed an aggregate term of ten to twenty years' imprisonment. On September 22, 2016, Appellant pled *nolo contendere* to three counts of burglary. The trial court accepted Appellant's plea and immediately imposed an aggregate sentence of seven and one-half to fifteen years' imprisonment, to run concurrently with the sentence imposed for the firearms offenses.[4]

On January 4, 2018, this Court affirmed the judgment of sentence. Appellant subsequently filed a *pro se* PCRA petition, postmarked March 26, 2018. The PCRA court appointed counsel and conducted an evidentiary hearing on August 13, 2018.[5] At the hearing, Appellant presented testimony in support of five ineffectiveness claims.

_____

[4] Due to the instant convictions, the trial court subsequently revoked an unrelated probationary sentence at docket number 485-2013.

[5] Prior to the filing of the instant PCRA petition, Appellant filed a *pro se* petition for allowance of appeal with the Pennsylvania Supreme Court. The Supreme Court docketed Appellant's petition on February 16, 2018, and it disposed of

First, Appellant testified that trial counsel should have played a videotape at trial. *See* N.T. PCRA Hr'g, 8/13/18, at 9. The videotape featured a police interview with Paige Morris, where she made statements that contradicted her trial testimony. *Id.* Appellant acknowledged that trial counsel attempted to play the tape, but a "technical difficulty" prevented the jury from viewing it. *Id.* at 10. Appellant insisted that the jury's inability to see the videotape caused him to suffer prejudice. *Id.*

Second, Appellant testified regarding the trial testimony of Mark Antonelli, the manager of the Three Crowns Motor Lodge. *Id.* at 11. During Antonelli's testimony at trial, the Commonwealth displayed the receipt for Appellant's stay at the motel. *Id.* At the PCRA hearing, Appellant claimed that the motel receipt was altered to indicate that he paid for a three-night stay instead of one night. *Id.* at 12. Appellant testified that he told trial

_____

the petition via administrative closure on May 3, 2018. Thereafter, the PCRA court scheduled Appellant's PCRA evidentiary hearing for June 18, 2018. On June 1, 2018, the Commonwealth requested a continuance, noting that the PCRA court "likely does not currently have jurisdiction to hold a hearing," as Appellant could still pursue his direct appeal rights by filing a petition for writ of *certiorari* with the United States Supreme Court. Mem. Requesting Continuance, 6/1/18, at 1 (unpaginated). The Commonwealth noted that Appellant's ninety-day period for filing a petition for writ of *certiorari* would expire on August 1, 2018, and it requested that the PCRA court continue the evidentiary hearing until after that date. The PCRA court granted the Commonwealth's request and conducted the evidentiary hearing on August 13, 2018. At that time, Appellant confirmed that he had not filed a petition for writ of *certiorari* with the United States Supreme Court, and he orally moved to amend the filing date of the PCRA petition to August 13, 2018. *See* N.T. PCRA Hr'g, 8/13/18, at 4. The Commonwealth did not oppose the oral motion for amendment, which the PCRA court granted. *Id.*

counsel about the alteration, but trial counsel did not cross-examine Antonelli about the topic. *Id.* Appellant insisted that trial counsel should have pressured Antonelli for explanation about the numbers on the receipt.

Third, Appellant testified that trial counsel was ineffective for failing to request a mistrial when the trial court declined to give a "corrupt and polluted source" instruction about testimony from Morris and Gilbert. *Id.* at 14. In the alternative, Appellant alleged that trial counsel was ineffective for having the firearms charges severed, which effectively prevented the trial court from providing the corrupt and polluted source instruction.[6] *Id.* at 6. Regarding counsel's advice about such an instruction, Appellant stated:

> [PCRA Counsel]: Okay. Did [trial counsel] explain to you anything about your co-defendants?
>
> [Appellant]: No, he did not.
>
> [PCRA Counsel]: Okay. What was his advice to you about the jury instructions and the corrupt and polluted source, did he have any—did he talk to you about that?
>
> [Appellant] No, he did not. Whenever I got my trial transcripts, I [saw] it in the transcripts that they had a little sidebar. I didn't know anything about it.

---

[6] Trial counsel requested a corrupt and polluted source instruction. *See* N.T. Trial, 1/27/16, at 212-13. However, the Commonwealth argued that language about a corrupt and polluted source should be included only as part of an instruction about accomplice testimony. *Id.* at 212. Further, the trial witnesses were charged as accomplices related to the burglaries, not the firearms offenses for which Appellant stood trial. *Id.* Therefore, the Commonwealth concluded that Appellant was not entitled to a corrupt and polluted source instruction. *Id.* The trial court agreed with the Commonwealth and declined to provide the instruction. *Id.* at 213.

- 7 -

*Id.* at 14. Appellant concluded that a corrupt and polluted source instruction would have helped to sway the jury in his favor. *Id.* at 15.

In his fourth and fifth claims, Appellant argued that trial counsel was ineffective based on two omissions. Appellant testified that he asked trial counsel to request a trial continuance after learning about unfavorable evidence during discovery. *Id.* at 11. Despite Appellant's request, trial counsel did not seek the continuance. *Id.* Appellant also testified that he asked trial counsel to file a motion to suppress the evidence obtained as a result of the search of the motel room, including the cell phone photos of the firearms. *Id.* at 13. Again, trial counsel did not comply with Appellant's request, and Appellant insisted that trial counsel's omission resulted in prejudice. *Id.*

Trial counsel also testified at the PCRA hearing, and he responded to each of Appellant's claims. Regarding the videotaped interview between Morris and the police, trial counsel emphasized that Morris admitted that she lied to the police during her cross-examination at trial. *Id.* at 20. Therefore, even though trial counsel did not play the videotape, he still made the jury aware of Morris' credibility issues. *Id.* at 20-21.

Regarding the motel receipt, trial counsel noted that Appellant had conceded that he was staying at the motel during the period at issue. *Id.* at 22. Because there was no question about Appellant's usage of the motel room, trial counsel did not think Appellant stood to gain from an attack on Antonelli about the details listed on the receipt:

[Commonwealth]: Essentially, if you tried to beat Mr. Antonelli up about a receipt, where would that end up? Would it go anywhere in your opinion?

[Trial Counsel]: Well, no, I think it would have been—I mean, what [am I] going to say in front of a jury? Well, ladies and gentlemen, [Appellant] only paid for one night. He acknowledges that he was there or the evidence is there that he was there. It's just he didn't—he only paid for one night. I don't see that as a plausible argument in . . . front of a jury. I want them to believe what I have to say. I don't want them to just look [at me] like I'm desperate. I mean, that's part of the trial strategy.

*Id.*

Regarding his failure to request a continuance, trial counsel confirmed that the discovery he received from the Commonwealth included the incriminating evidence. *Id.* at 23. Nevertheless, trial counsel did not believe a continuance was warranted on this basis:

The pictures are what the pictures are. Why do I need a continuance? What is it that we're going to get by a delay? And, again, I never got an answer and I said, [Appellant], I can't ask for something if I don't have a good faith basis to do it. I have to have a reason. I can't just say I want a continuance and I get one. It doesn't work that way.

*Id.*

Regarding the corrupt and polluted source instruction, trial counsel provided the reason for his decision to sever the firearms offenses:

It was easier to defend that and I don't want . . . all these charges coming in and [the jury] convict[s] him just because of his association with other people or just the amount of charges. My experience leads me to believe that it's easier to or you're more successful if you keep the charges to a minimum. So, yes, I thought that was a good strategy.

*Id.* at 25.

Trial counsel also noted that Appellant had prior burglary convictions that the Commonwealth would introduce when prosecuting the firearms offenses, and such evidence could have influenced the jury as to Appellant's guilt on the pending burglary charges unless they were severed. *Id.*

Finally, trial counsel testified about his advice to Appellant concerning the filing of a suppression motion. After reviewing the search warrants, trial counsel concluded that he did not have any basis for a suppression argument. *Id.* at 26. Trial counsel attempted to explain this, but Appellant "never liked the answer that I gave him[.]" *Id.*

At the conclusion of the hearing, the PCRA court took the matter under advisement and directed the parties to submit memoranda of law within ten days. Appellant and the Commonwealth timely filed their memoranda. On August 29, 2018, the PCRA court denied Appellant's PCRA petition.

Appellant timely filed a notice of appeal on September 27, 2018, listing docket numbers 837 and 884 of 2015 in the caption. That same day, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on October 10, 2018, and the PCRA court filed a responsive opinion concluding that Appellant had failed to demonstrate trial counsel's ineffectiveness.

On October 16, 2018, this Court issued an order directing Appellant to show cause why his appeal should not be quashed in light of ***Commonwealth***

*v. Walker*, 185 A.3d 969 (Pa. 2018).[7]  Appellant responded that he would seek to file separate notices of appeal, and this Court discharged the rule to show cause.

On October 23, 2018, Appellant filed a motion for *nunc pro tunc* appeal with the PCRA court, requesting that he be allowed to file separate notices of appeal *nunc pro tunc* to comply with *Walker*.  Appellant also noted that the Commonwealth did not object to the relief requested.  The PCRA court granted Appellant's motion on October 24, 2018, reinstating Appellant's appeal rights for the purpose of compliance with *Walker*.  On October 26, 2018, Appellant filed three separate notices of appeal from docket numbers 485 of 2013 and 837 and 884 of 2015.

PCRA counsel's *Turner*/*Finley* brief identifies five issues, alleging that trial counsel was ineffective for (1) failing to request a continuance of trial after receiving discovery; (2) failing to play a videotaped interview of a witness to demonstrate that she lied to the police; (3) failing to properly cross-examine a witness concerning the allegedly altered motel receipt; (4) failing

---

[7] "Where . . . one or more orders resolves [sic] issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."  Pa.R.A.P. 341 note (citation omitted).  On June 1, 2018, the Pennsylvania Supreme Court decided *Walker* and emphasized, "[t]he Official Note to Rule 341 provides a bright-line mandatory instruction to practitioners to file separate notices of appeal."  *Walker*, 185 A.3d at 976-77.  Further, the *Walker* Court announced, "in future cases Rule 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal."  *Id.* at 977 (footnote omitted).

to pursue a trial strategy that would have resulted in the issuance of a corrupt and polluted source instruction, and failing to object to the court's refusal to give such an instruction; and (5) failing to file a motion to suppress evidence obtained pursuant to the motel room search. *Turner*/*Finley* Brief at 2-4.

Before we address Appellant's issues, we note that PCRA counsel has filed a petition to withdraw and a no-merit brief under *Turner*/*Finley*. Appellant has not filed a *pro se* brief or a counseled brief with new counsel. Accordingly, we must first address whether PCRA counsel has fulfilled the procedural requirements for withdrawing his representation in this Court. *Commonwealth v. Muzzy*, 141 A.3d 509, 510 (Pa. Super. 2016) (stating that "[p]rior to addressing the merits of the appeal, we must review counsel's compliance with the procedural requirements for withdrawing as counsel" (citation omitted)).

As we have explained,

[c]ounsel petitioning to withdraw from PCRA representation must proceed . . . under [*Turner* and *Finley*] and . . . must review the case zealously. *Turner*/*Finley* counsel must then submit a "no-merit" letter to the [PCRA] court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

\* \* \*

> Where counsel submits a petition and no-merit letter that .
> . . satisfy the technical demands of **Turner**/**Finley**, the
> court—[PCRA] court or this Court—must then conduct its
> own review of the merits of the case. If the court agrees
> with counsel that the claims are without merit, the court will
> permit counsel to withdraw and deny relief.

*Id.* at 510-11 (citations omitted).

Here, PCRA counsel's petition to withdraw and brief to this Court detail his diligent review of the case and include the issues Appellant wishes to have reviewed. PCRA counsel explains the reasons the issues lack merit and requests permission to withdraw. Additionally, PCRA counsel has provided Appellant with a copy of the no-merit brief and application to withdraw, as well as a statement advising Appellant of his right to proceed *pro se* or with privately retained counsel. Accordingly, we will permit PCRA counsel to withdraw if, after our review, we conclude that the issues relevant to this appeal lack merit.

In the first issue, PCRA counsel identifies Appellant's claim that trial counsel should have requested a continuance after obtaining the discovery materials from the Commonwealth. **Turner**/**Finley** Brief at 2. PCRA counsel maintains that trial courts do not automatically grant continuances, and trial counsel determined there was no reasonable basis for requesting a continuance here. *Id.*

Our review of the denial of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (quotation marks and citation omitted). "The PCRA court's

findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Lawson***, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted). We review "the PCRA court's legal conclusions *de novo*." ***See Miller***, 102 A.3d at 992 (citation omitted).

We presume that the petitioner's counsel was effective. ***Commonwealth v. Williams***, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffectiveness, a petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Turetsky***, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). A petitioner must establish (1) that the underlying claim has arguable merit; (2) that counsel lacked a reasonable basis for his action or inaction; and (3) but for the act or omission in question, the outcome of the proceedings would have been different. ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." ***Id.*** (citation omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.] Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. K. Smith***, 167 A.3d 782, 788 (Pa. Super. 2017) (citations and quotation marks omitted), *appeal denied*, 179 A.3d 6 (Pa. 2018).

Generally, "[t]he grant or denial of a motion for a continuance is within the sound discretion of the trial court[.]" ***Commonwealth v. Antidormi***, 84 A.3d 736, 745 (Pa. Super. 2014) (citation omitted). "[A] bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion. An appellant must be able to show specifically in what manner he was unable to prepare . . . or how he would have prepared differently . . . ." ***Id.*** (citations and quotation marks omitted); ***see also Commonwealth v. Wright***, 961 A.2d 119, 133 (Pa. 2008) (stating, "In determining whether denial of a continuance in a criminal case was an abuse of discretion, we consider the nature of the crime and the attending circumstances. We also have regard for the orderly administration of justice and the criminal defendant's right to have adequate time to prepare a defense." (citations omitted)).

Instantly, the PCRA court evaluated trial counsel's decision not to seek a continuance as follows:

> [Trial counsel] testified that he did not have any such basis for requesting the continuance[,] as the only reason [Appellant] gave for wanting a continuance was that [Appellant] did not like the evidence the Commonwealth was intending to present[,] which was harmful to [Appellant's] position and strongly implicated [Appellant] in the commission of the crimes. [Trial counsel] discussed the issue with [Appellant] and told him that having a desire to keep evidence from the jury does not entitle him to a continuance without another valid reason. In this case[,] the [c]ourt finds [trial counsel's] testimony to be credible.

PCRA Ct. Op., 8/29/18, at 6-7.

Following our review of the record and Appellant's arguments, we discern no basis to disturb the PCRA court's determination. We emphasize that Appellant did not demonstrate how the lack of a continuance left him unable to prepare or how he would have prepared differently had trial counsel obtained the continuance. *See Antidormi*, 84 A.3d at 745. In light of the relevant case law and applicable standard of review, we conclude that Appellant's first claim lacks arguable merit. *See K. Smith*, 167 A.3d at 788; *Miller*, 102 A.3d at 992.

In his second issue, PCRA counsel identifies Appellant's contention that trial counsel should have played the videotaped interview of Morris for the jury. *Turner*/*Finley* Brief at 3. However, PCRA counsel notes that trial counsel's cross-examination of Morris independently established that Morris had lied to the police. *Id.*

Instantly, as trial counsel noted at the PCRA hearing, Morris' cross-examination revealed that she had lied to the police during the videotaped interview:

[Trial Counsel]: Do you remember telling the police things before?

[Morris]: Right.

[Trial Counsel]: Remember at an interview with Officer Higgs?

[Morris]: Yeah.

[Trial Counsel]: Do you remember at that interview telling Officer Higgs that you were asked if there were guns in the room and you said you didn't see any guns. Do you remember telling him that?

- 16 -

[Morris]: Yes.

*   *   *

[Trial Counsel]: When you told Officer Higgs that you didn't see any guns, was that the truth or a lie?

[Morris]: You know, that was a lie until two people snitched and then I was digging myself a hole because obviously two people already snitched.

[Trial Counsel]: So now you're looking for an opportunity?

[Morris]: Well, I mean, why lie if it's already in the open?

N.T. Trial at 155, 157.

As the videotaped interview would have been cumulative of Morris' testimony, we cannot consider trial counsel ineffective for failing to play it for the jury. *See Commonwealth v. Hanible*, 30 A.3d 426, 448-49 (Pa. 2011) (reiterating that "trial counsel cannot be deemed ineffective for failing to present" proposed evidence that is cumulative of trial testimony).

In his third issue, PCRA counsel identifies Appellant's claim that trial counsel was ineffective in conjunction with his cross-examination of Antonelli about the motel receipt. *Turner/Finley* Brief at 3. Nevertheless, PCRA counsel asserts that any alteration of the receipt had no bearing on the case, because overwhelming evidence established that Appellant was staying at the motel during the relevant period. *Id.* 4.

"To establish the third, prejudice prong [of the test for ineffectiveness], the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's

ineffectiveness." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127-28 (Pa. 2011) (citation omitted).

> In making this determination, a court hearing an ineffectiveness claim must consider the **totality of the evidence** before the judge or jury . . . . Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Ultimately, a reviewing court must question the reliability of the proceedings and ask whether the result of the particular proceeding [was] unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

***Commonwealth v. Crispell***, 193 A.3d 919, 932 (Pa. 2018) (citations and quotation marks omitted) (emphasis in original).

Instantly, the PCRA court analyzed trial counsel's cross-examination of Antonelli in light of the fact that Appellant admitted that he was staying at the motel when the events at issue occurred:

> There is no dispute from the overwhelming evidence presented at trial that [Appellant] was staying in Room 114 of the Three Crowns Motel . . . at the time in question. [Appellant] admitted as much to [trial counsel] prior to trial and subsequently during the PCRA hearing. Nonetheless, [Appellant] asserts that [trial counsel] was ineffective for failing to question the motel manager about alleged alterations to the dates on the receipt. The evidence at trial showed that the key to Room 114 . . . was found on [Appellant's] person by State Police Troopers, that there were photographs on [Appellant's] cell phone taken inside of Room 114, and personal items belonging to [Appellant] were found by law enforcement during a search of Room 114. [Appellant] admitted he was staying in the room but now asserts he paid for one night and his co-defendants . . . paid for the other nights, and therefore the receipt was forged.

* * *

> [Trial c]ounsel's manner of cross-examining the witness concerning the receipt was objectively reasonable. [Appellant] has also failed to establish that he suffered any prejudice as a result of the claimed error in this regard. No matter how vigorously and aggressively [trial counsel] attacked the manager of the Three Crowns Motel, regardless of the dates noted on the receipt[,] the overwhelming evidence demonstrated that [Appellant] was staying in Room 114 of the Three Crowns Motel on the date law enforcement officers located the stolen firearms at issue.

PCRA Ct. Op. at 5-6. Under the totality of this evidence, trial counsel's failure to cross-examine Antonelli about the receipt did not create a reasonable probability that the outcome of the proceedings would have been different. *See Crispell*, 193 A.3d at 932; *Chmiel*, 30 A.3d at 1127-28.

In his fourth issue, PCRA counsel identifies Appellant's argument that trial counsel was ineffective for his inability to obtain—and his failure to challenge the trial court's refusal to give—a corrupt and polluted source instruction. *Turner*/*Finley* Brief at 4. PCRA counsel emphasizes that trial counsel requested the corrupt and polluted source instruction, but the relevant law and circumstances of the case precluded the trial court from giving the instruction. *Id.*

"With regard to the second, reasonable basis prong [of the test for ineffectiveness], we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Chmiel*, 30 A.3d at 1127 (citation and quotation marks omitted). "We will conclude that counsel's chosen strategy lacked a reasonable basis only if [the petitioner] proves that

an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Id.*** (citation and quotation marks omitted).

"[I]n any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution." ***Commonwealth v. J. Smith***, 17 A.3d 873, 906 (Pa. 2011) (citation and quotation marks omitted).

> For an accomplice charge to be required, the facts need to permit an inference that the witness was an accomplice. If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony.

***Id.*** (citations and quotation marks omitted).

Instantly, the PCRA court determined that Appellant was not entitled to a corrupt and polluted source instruction, and trial counsel's strategy to sever the burglary charges was sound:

> The decision to decline [trial counsel's] request for such an instruction was legally correct.
>
> \* \* \*
>
> Further, a review of the trial transcript indicates that [trial counsel] spent a good portion of his closing argument telling the jury that [Appellant's] co-defendants (in the burglary cases), Paige Morris and Nathan Gilbert[,] should not be believed largely for the reasons that are otherwise provided for in the corrupt and polluted source instruction. [***See*** N.T. Trial at 215-17.]
>
> Finally, to address the decision to sever charges for trial, it is clear [that trial counsel] had to make strategic decisions which he believed would be in the best interests of defending [Appellant].

Specifically, in CR-884-2015, [Appellant] was charged with both burglary, conspiracy to commit burglary, and three counts of persons not to possess a firearm, each as a felony of the second degree. At the same time in CR-837-2015, [Appellant] was charged with two counts of burglary, two counts of conspiracy to commit burglary, two counts of criminal attempt to commit burglary, and one count of persons not to possess firearms.

Prior to trial[, trial counsel] made the sound, strategic decision to sever the persons not to possess firearms charges from the burglary counts for trial purposes. Had he not done so, the Commonwealth would have been permitted to introduce into evidence for the juries' consideration [Appellant's] two felony burglary convictions from prior cases. After all[,] it is those prior burglary convictions which deprived [Appellant] of his right to possess firearms and serve as the basis for the persons not to possess firearms charges. [Trial counsel] had a legitimate and reasonable basis to follow a trial strategy that would prevent the jury from hearing about [Appellant's] previous burglary convictions in a trial where [Appellant] was charged with multiple burglary counts and conspiracy to commit burglary in addition to the persons not to possess firearms counts.

PCRA Ct. Op. at 9-10.

On this record, we cannot say that the PCRA court erred in its analysis. *See Chmiel*, 30 A.3d at 1127; *Miller*, 102 A.3d at 992. The PCRA court credited trial counsel's explanation that he did not want to highlight Appellant's previous burglary convictions. We conclude that the PCRA court properly determined that trial counsel provided a reasonable basis for his inaction, and we decline Appellant's invitation to second-guess trial counsel's strategy. *See Chmiel*, 30 A.3d at 1127; *see also Commonwealth v. Sneed*, 45 A.3d 1096, 1107 (Pa. 2012) (stating that ineffectiveness claims "generally cannot succeed 'through comparing, in hindsight, the trial strategy [actually] employed with alternatives not pursued.'" (citation omitted)).

- 21 -

In his fifth issue, PCRA counsel identifies Appellant's allegation that trial counsel was ineffective for failing to file a motion to suppress the evidence obtained as a result of the search of the motel room. *Turner*/*Finley* Brief at 4. PCRA counsel contends that there was no basis for suppression of the evidence at issue. *Id.*

"The Fourth Amendment, by its text, has a strong preference for searches conducted pursuant to warrants. A neutral and detached magistrate must determine whether probable cause supports issuance of a warrant." *Commonwealth v. Kemp*, 195 A.3d 269, 275 (Pa. Super. 2018) (citations and quotation marks omitted).

> [T]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.

*Commonwealth v. Green*, 204 A.3d 469, 482 (Pa. Super. 2019) (citations and quotation marks omitted). "Under such a standard, the task of the issuing authority is to make a practical, common sense assessment [of] whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Murphy*, 916 A.2d 679, 682 (Pa. Super. 2007) (citation omitted).

Instantly, at 837-2015, the police submitted the following affidavit of probable cause to support the issuance of a warrant to search Room 114 at the Three Crowns Motor Lodge:

On 5/20/2015, at 0830 hrs., the affiant interviewed Autumn Nicole Doyle at the Cumberland Township Police Department. During her interview she relayed the following information. Doyle advised that she met up with Nathan Gilbert in Biglerville at approximately 2200 hrs. on 5/19/2015. Doyle stated that Gilbert requested that she accompany him to a friend's motel room in Gettysburg, on Steinwehr Avenue . . . . While there she met a w/n/m subject, who identified himself as "Kirby" and a w/n/f, who identified herself as "Brittany." While hanging out in the room "Kirby" pulled several firearms from underneath one of the beds in the room and showed same to Gilbert.

Doyle described the firearms as follows: (1) Black metal military style rifle . . . , (2) Other long guns and (3) pistols (one being a small metal revolver type)
*Doyle described the firearms as visually appearing to be real[.]

Doyle further advised that she was suspicious of the aforementioned firearms origin as they were wrapped in clothing when they were pulled out from under the bed. Doyle advised that she felt the guns were obtained illegally.

Based on my training and experience the description provided by Doyle appeared to be consistent with weapons which are designed to or readily converted to expel projectiles by means of an explosion.

On 5/20/2015 at 1300 hrs. Lt. Guise met with Autumn Doyle relative to this case. During said meeting Doyle was shown an eight person photo line-up containing [Appellant's] picture. Doyle positively identified [Appellant] as the subject that she had met earlier in the motel room. Doyle further advised that [Appellant] was the subject in possession of the above noted guns. Lt. Guise personally relayed this information to your affiant.

During the course of this investigation the affiant ran a Criminal History Records Check on [Appellant]. Said check returned a

- 23 -

secured docket sheet showing that [Appellant] was convicted of Burglary, graded as a Felony of the first degree, dated January 15, 2014 (Franklin County PA). Said Burglary conviction disqualifies [Appellant] from owning/possessing a firearm.

Sgt. Tim Biggins and Ptlm. Josh Rosenberger made contact with office personnel, specifically Mark [Antonelli], at the Three Crowns Motel, 205 Steinwehr Avenue . . . . During said contact, office personnel indicated that [Appellant] rented room #114 on 5/17/2015. Personnel advised that [Appellant] had paid in advance for a three day stay at the Motel, departure date 5/20/2015. Sgt. Biggins and Ptlm. Rosenberger subsequently secured the room pending service of a Search Warrant. Sgt. Biggins and Ptlm. Rosenberger personally related this information to your affiant.

Aff. of Probable Cause, 5/20/15.

The circumstances described in the affidavit of probable cause created a fair probability that police would find evidence of a crime at Appellant's motel room. *See Murphy*, 916 A.2d at 682. Because the search warrant was valid, there is no arguable merit to Appellant's claim that trial counsel was ineffective for failing to file a suppression motion. *See Green*, 204 A.3d at 482; *Kemp*, 195 A.3d at 275.

Because our own review of the record confirms that each of Appellant's issues are without merit, we affirm the order denying Appellant's PCRA petition, and we grant PCRA counsel's petition to withdraw. *See Muzzy*, 141 A.3d at 510; *Miller*, 102 A.3d at 992.

Order affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/18/2019